WILLIAM N. HALL

*vs.*

CUMBERLAND COUNTY POWER AND LIGHT COMPANY.

Cumberland.    Opinion October 30, 1923.

*As a general rule a verdict will not be disturbed because of conflicting evidence, if the evidence supporting the verdict is reasonable and so consistent under the circumstances with the probabilities of the case as to raise a fair presumption of its truth when weighed against the opposing evidence.    When it is overwhelmed by the opposing evidence a verdict cannot stand.*

In the instant case an analysis of the testimony of the plaintiff and the two witnesses on whom he relies to support his contentions, considered in the light of the circumstances admitted or conclusively shown to exist, is so inherently improbable as an account of what occurred, and is so overwhelmed by the testimony of the defendant, much of which is from disinterested witnesses, that it is morally certain that the jury erred in its verdict.

On motion by defendant.    An action to recover for personal injuries sustained by plaintiff resulting from a collision between a trolley car, operated by defendant and a motorcycle being driven by plaintiff which occurred in the Deering section of Portland on September 22, 1921.    The case was tried to a jury who rendered a verdict of $2,500.00 for plaintiff, and defendant filed a general motion for a new trial.    Verdict set aside.    New trial granted.

The case is stated at length in the opinion.

*Jacob H. Berman, Carroll B. Skillin and E. H. Wilson,* for plaintiff.

*Verrill, Hale, Booth & Ives,* for defendant.

SITTING:    CORNISH, C. J., HANSON, PHILBROOK, WILSON, DEASY, JJ.

WILSON, J.    An action to recover for personal injuries resulting from a collision between one of the defendant's trolley cars and a motorcycle which the plaintiff was driving.    The jury awarded the plaintiff a verdict and the case comes before this court on a motion by the defendant for a new trial on the usual grounds.

As a general rule a verdict of a jury will not be disturbed by this court where the evidence is conflicting.   A conflict of testimony, however, does not arise merely because one witness testifies contrary to another.   There must be substantial evidence in support of the verdict, that is, "evidence that is reasonable and so consistent with the circumstances and probabilities in the case as to raise a fair presumption of its truth when weighed against the opposing evidence. When it is overwhelmed by the opposing evidence, a verdict cannot stand."   *Moulton* v. *Railway Co.*, 99 Maine, 508, 509; *Smith* v. *Ins. Co.*, 85 Maine, 348; *McCarthy* v. *Bangor & Aroostook R. R.*, 112 Maine, 5; *Edgerly* v. *Thompson*, 121 Maine, 572, 575.

As to the manner in which the collision occurred there can be no question.   The defendant's trolley car was proceeding southerly along its tracks on Forest Avenue, a main street or avenue leading from that section of the city of Portland known as Woodfords, to Congress Street, and was slowing up to take on passengers awaiting near a white post just southerly of a side street coming into Forest Avenue.   As the defendant's car was passing the side street, the plaintiff on a motorcycle with a companion on the "tandem seat" from whom he was receiving instructions as to its operation, came into Forest Avenue from the side street to also go southerly toward Congress Street, and was suddenly confronted by a number of persons, several of them ladies, coming out from the sidewalk to board the defendant's car.   In trying to avoid them he swerved his motorcycle to the left and came into collision with the fender attached to the front end of defendant's car and was carried along with the car nearly half a car length or at least some distance, with his left leg between the side of the fender and some part of the motorcycle, before the car came to a stop.

It is clear beyond peradventure that the defendant was not at fault so far as the collision is concerned.

The plaintiff, however, relies upon the evidence of two other witnesses besides himself, one of them being his companion, who was riding on the "tandem seat," and who was the owner of the motorcycle, and the other a friend who chanced to be a passenger on the trolley car at the time, to the effect that after the car had come to a stop and the plaintiff's companion had time to arise from the ground where he had been thrown by the impact and go ahead to the front of the car for the purpose of disengaging the motorcycle from the fender,

and the friend in the car had time after the collision to leave his seat and walk forward to the front vestibule or platform beside the motorman, the motorman either by mistake or design started the car ahead two or three feet. The jury's verdict must rest upon this evidence. The plaintiff claiming that it was the starting of the car after it had come to a stop following the collision, which in some way forced the side of the fender against the plaintiff's left leg and broke it.

A brief analysis of the testimony of these two witnesses shows it to be inherently improbable as an account of what occurred, considered in the light of the circumstances admitted or conclusively shown to exist; and their testimony as to the car starting while the motorcycle was engaged with the fender is overwhelmed by the testimony of every disinterested witness who saw the accident. Even the plaintiff himself who was sitting on the motorcycle engaged in some way with the car or fender is not willing to say he saw the car move ahead after its first stop following the collision. He only felt it by reason of the pain in his leg.

The testimony of the plaintiff's companion is that after going to the front of the car where in full view of the motorman he was trying to disengage the motorcycle from the fender and with the plaintiff sitting in the operator's seat also in full view of the motorman, with his left leg between the fender and the motorcycle, the motorman for some reason started the car ahead two or three feet.

That a motorman of ten years' experience in the operation of trolley cars should, after the first excitement of the collision must have subsided, attempt to move a car in either direction without first investigating or receiving directions from his conductor, is only less improbable than that the plaintiff after having come into collision with the car with an "awful rush," as one disinterested witness states, and been carried along for nearly half the length of the car with his leg between the side of the fender and the motorcycle without injury, and while the car and the motorcycle were in the same relative position have his leg broken by the car moving ahead two or three feet, or that his leg would be broken at all in the position as described by the plaintiff's witnesses by the car again starting ahead, it being between the side of the fender and the chain guard of the motorcycle which was, according to their testimony, carried right along beside the car.

The testimony of the plaintiff's witness who was riding in the car is no less incredible and his description of how the plaintiff's leg was

broken by the moving of the car ahead is equally vague and improbable. He states that he stepped from his seat after the collision and the car came to a stop and went up to the front platform and saw the plaintiff in the same position as described by the plaintiff and his companion and while standing there, the motorman gave a signal of "four bells" to notify the conductor that he was about to back the car and upon receiving an answering signal from the conductor, instead of backing the car in accordance with his signal, he started the car ahead; and although this unusual thing occurred and the witness was looking down through the door window at his friend caught between the motorcycle and the fender of the car and saw the fender bend his friend's leg under it until the toes of his foot were sticking up through the meshes of the fender, and also saw the apparent suffering of his friend, yet he says he never uttered one word of protest or exclamation.

The testimony of the plaintiff and his two witnesses as to the starting of the car or the giving of any signals to back the car is not only denied by the motorman and conductor and a third employee of the defendant who was on the front platform, but is either denied or at least was not observed or heard by any of the disinterested witnesses. Counsel urge that the testimony of the disinterested witnesses is only negative. An examination of their testimony discloses that while some of them admitted that certain things could have occurred without their seeing or hearing, the occurrences described by the plaintiff's witnesses clearly could not have occurred without their being seen or heard by some of those either in the car or outside waiting to board it, and not a single witness, other than the two friends of the plaintiff, saw the car start ahead or heard any signal given.

The following testimony in cross-examination of one of those waiting to take the car and only twenty-five or thirty feet from the point of collision, who, as he said, "was looking to see what was done and what the result of the collision was," cannot be said to be mere negative testimony:

"Q.  And was it possible for that car to start and you not observe it?

"A.  I should think not.

"Q.  If it had done so, you would have seen it?

"A.  Yes."

All the others who were waiting to take the car if not equally positive in their testimony, saw no starting of the car after it had come to a stop, or heard any signals, or any outcry.

Another witness, a passenger in the car who was sitting in the seat nearest the motorman, testified that he immediately rose and stepped up beside the motorman after the impact, looked out through the glass in the door and stood looking down upon the accident and that the motorman stood beside him also looking down, that the witness remained in this position until the plaintiff was removed; and he says there were no signals given by bells or any starting of the car ahead.

It is clear, we think, from the evidence presented that the injuries of the plaintiff must have occurred when the motorcycle, as one witness states, with an "awful rush" came around the corner of the side street and collided with the car, the result of which from the testimony of the plaintiff's own witnesses, in the natural course of events, must have brought the plaintiff's left leg against the side of the fender with great force.

If it was merely a question of accuracy of observation, or of veracity of witnesses, this court would not disturb the verdict; but when the evidence presented by the plaintiff is so inconsistent with what reasonable men would expect under the circumstances shown to exist; and the testimony of all the other witnesses as to whether the car was started ahead after the collision is overwhelming, and it is morally certain that the jury erred in its verdict, the verdict will be set aside.

Entry will be:

*Verdict set aside.*
*New trial granted.*