BAKULA, Respondent, vs. SCHWAB, Appellant, and another, Respondent. '

*April 30—June 19, 1918.*

*Negligence: Personal injuries: Errors cured by remitting part of damages: Excessive damages: Joint tortfeasors: Concurring negligent acts: Judgment against one defendant only: Construction: Effect as to other defendant: Appeal: Parties: Res adjudicata: Contribution between defendants: Bringing in new parties: Discretion.*

1. In an action for personal injuries, where the trial court required plaintiff, as a condition of judgment in her favor, to remit $1,000 of the $3,000 damages awarded by the jury, such remission is *held* to have compensated adequately for whatever prejudice, if any, resulted to defendant from the refusal to strike out certain testimony as to plaintiff having been taken to a hospital and there operated upon, from the inclusion in the special verdict of a question relating to mental suffering, from an instruction in which it was assumed that plaintiff was in the hospital for a longer time than the evidence showed, and from the refusal of a new trial asked for on the ground that the evidence was insufficient as a basis for assessing the damages— all of such rulings having been such as to affect only the question of damages.

2. Upon evidence that, as a result of personal injuries, plaintiff incurred expense of about $500, was confined to her bed for four months, and suffered much pain, an award of $2,000 (reduced to that amount from $3,000 awarded by the jury) is *held* not excessive.

3. In an action against two persons whose independent but concurring negligent acts are alleged to have caused an injury, where a verdict was directed in favor of one defendant and judgment 'rendered against the other, such judgment must be construed as one in favor of said first defendant although he is not mentioned therein—it being presumed that the judgment, as it should, disposed of all the issues.

4. Where notice of an appeal from such judgment by the defendant held liable was addressed to and served upon the other defendant, the latter, though in default, is a party to the appeal and the effect of the judgment as to him may be considered.

5. In an action against independent tortfeasors whose concurring wrongful acts are alleged to have caused an injury, a judgment in favor of one of the defendants but in plaintiff's favor against

the other is not *res adjudicata*, even upon the question of the liability of the defendants to the plaintiff, in a subsequent action for contribution between the defendants. Such a case is not within the reason of the rule which, in an action against defendants whose liabilities are founded upon contract, makes the judgment *res adjudicata* of the amount and nature of the indebtedness of all defendants to the plaintiff.

6. In order to be *res adjudicata* in a subsequent suit, a judgment must have been rendered in an action in which the parties to the subsequent suit were adverse parties, *i. e.* they must have been arrayed on opposite sides of an issue proffered by one and controverted by the other. The defendants in the tort action above mentioned were not such adverse parties.

7. So, too, an element essential to constitute *res adjudicata* is a right of appeal from the judgment; but in the case stated the defendant held liable cannot have the right to appeal and secure a reversal of the judgment on the ground that it was error to release the other defendant, for that would unjustly subject the plaintiff to the unnecessary burden, expense, and hardship of another trial merely because of a possible future controversy between the defendants upon the subject of contribution.

8. The defendant so held liable may bring his action for contribution against the other defendant and the latter cannot in such action use the judgment in the tort action for the purpose of showing that his wrong did not concur in producing the injury.

9. In a tort action, where a judgment holding the defendant liable will not affect his right to contribution from others whose concurring acts contributed to the wrong and, even if such others are brought in as defendants, the judgment cannot determine the rights of the defendants among themselves on the question of contribution, the trial court should exercise its discretion under sec. 2610, Stats., and deny an application, by the defendant originally sued, to have such others made parties. The right of the plaintiff in such a case to make his own election in the matter of joining tortfeasors as' defendants should be preserved.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

On the 14th day of October, 1915, the plaintiff was a passenger for hire in an automobile operated by defendant *Schwab*, going from Hales Corners to the city of Milwaukee, both in the county of Milwaukee. The automobile was proceeding in a northeasterly direction on what is known as the

Janesville Plank Road. As it approached the intersection of what is known as the Mill Road the driver thereof turned to the left to pass a certain horse and buggy driven by the defendant *J. A. Wilkinson.* As the driver of the automobile was about to pass, the horse and buggy turned to the left for the purpose of taking the Mill Road in a westerly direction, compelling the driver of the automobile to swerve further to the left in order to avoid a collision, the result being that the automobile ran into a ditch on the side of the road, resulting in personal injuries to the plaintiff. She brought this action to recover therefor in the circuit court for Milwaukee county against the defendant *Martin Schwab.* Upon motion of *Schwab* the defendant *Wilkinson* was made a party defendant to the action, and it proceeded to trial in that court against both defendants. No cross-complaint was made or filed by either defendant, and there was no issue between them. At the close of the testimony the court directed a verdict in favor of the defendant *Wilkinson.*

The jury returned a special verdict in which it found (1) that the driver of the automobile in which the plaintiff was riding at the time she was injured was not in the exercise of ordinary care; (2) that such want of ordinary care was the proximate cause of the injury to plaintiff; (3) that plaintiff suffered pain, mental and physical, resulting from this injury after she left the hospital; and (4) fixed her damages at $3,000.

The defendant *Schwab* moved to set aside the verdict and for a new trial upon various grounds. Upon this motion the court ordered a new trial unless the plaintiff remit $1,000 from the verdict within twenty days. The plaintiff duly filed her remission of $1,000 from the verdict, and judgment was entered thereon in favor of the plaintiff and against the defendant *Schwab* for $2,000. From such judgment the defendant *Schwab* brings this appeal.

For the appellant there was a brief by *Lehr & Kiefer,* attorneys, and *Wm. E. Burke,* of counsel, all of Milwaukee, and oral argument by *Mr. Burke.*

For the respondent *Bakula* there was a brief by *Joseph G. Hirschberg,* attorney, and *Horace B. Walmsley,* of counsel, both of Milwaukee, and oral argument by *Mr. Hirschberg.*

OWEN, J.    The evidence shows that the day after the accident the plaintiff was confined to her bed and Dr. Graham was called to attend her.    He was in constant attendance upon her until the 19th day of December following, when he was discharged, and Dr. Hoermann was employed and attended her until her recovery.    Dr. Graham testified that when he first examined the plaintiff she had a temperature of 103 with severe pains over the entire abdomen, especially on the left side.    She had an indurated mass on the left side through the vagina extending up to the anterior superior spinous process.    As time passed on, that ecchymotic condition became greater, due to the fact that the blood became more stagnant and collected about that injured part.    She became very sick and he was led to believe that she had an abscess in the pelvic cavity.    On October 31st he put her under chloroform and examined that region.    He found a congealed gaseated mass.    He also performed a curettement. On the 21st day of November he performed what he calls a major operation to determine what caused the congested mass in the left iliac fossa.    During the time from October 16th to December 19th he saw her from one to three times a day. She was very much excited, weak, had high temperature, and was in bed during all of the time.    During that time her condition was generally very painful and he considered it extremely serious.    He expressed the positive opinion that her condition was caused by the injury.    When he left her on December 19th she was improving, but she would at least

have to have the services of a physician for six or eight weeks after that. She had temperature when he left her and would have it for at least three weeks from that time.

The plaintiff testifies that after Dr. Graham was discharged and Dr. Hoermann was placed in charge of the case she was taken to the hospital on the 19th of December, where an operation was performed upon her. She remained in the hospital from the 19th day of December until the 10th day of January, when she was taken home and there confined to her bed until April, 1916. That is all we know concerning her condition after Dr. Graham was discharged, as Dr. Hoermann was not called as a witness in the case. Neither do we know the reasons for, nor the nature of, the operation performed by Dr. Hoermann at the hospital, as the plaintiff could give no information upon that matter.

Upon the trial, pursuant to an order of the court, Dr. P. H. McGovern made a physical examination of the plaintiff. Dr. Graham was present at this examination. He found a fibroid tumor in the womb. He testified that the tumor must have been coming on for some time. It was not due to injury. It was his opinion that the condition described by Dr. Graham was due to the fibroid tumor and not the injury. Dr. Graham, however, testified positively that there was no fibroid tumor present at the time he was attending plaintiff.

At the conclusion of the testimony defendant *Schwab* moved to strike out all of the testimony of the plaintiff to the effect that she was taken to the hospital and was there operated on by Dr. Hoermann and incurred expense, for the reason that it did not appear in the case that she went to the hospital by reason of the accident. He assigns the refusal of the court to strike out this testimony as error. He also claims that the court erred in including question No. 3 in the special verdict, because there was no evidence that she suffered mental pain at any time. Another alleged error is the instruction of the court relative to question No. 3, wherein the court assumed

that the plaintiff was in the hospital until April, 1916.
Error is also assigned upon the refusal of the court to grant
a new trial, for the reason that there was not sufficient testi-,
mony from which the jury could honestly and clearly deter-
mine the amount of plaintiff's damages, the damages being
necessarily based upon conjecture and guess.

We will dispose of all these assignments of error with the
statement that we are entirely satisfied that whatever prej-
udice, if any, resulted to the appealing defendant by reason
of the court's action in these various respects was adequately
compensated by the remission of $1,000 from the verdict.
We think the testimony fully sustains the judgment for the
plaintiff for $2,000. In the first place, she proved expenses
in the neighborhood of $500; $275 to Dr. Graham, services
of a girl at $5 per week, and board at $4.per week, for twenty
weeks, and the services of a scrub woman at $2 per week for
a like period. This leaves but $1,500 to compensate her for
the pain, suffering, inconvenience, and loss of time. That
she suffered seriously is fully established by the testimony
of Dr. Graham; and the trial judge, in his decision upon a
motion for a new trial, says: "It seems quite certain that
she was a severe sufferer for some time after the accident, and
that her suffering was produced by it." She was attended
by Dr. Graham for more than two months, and his testimony
was that she would require the services of a physician, as a
result of the injuries, for a period of six to eight weeks there-
after. It appears that she was confined to her bed until
April, and that she had undergone an operation, in the hos-
pital, between the 19th of December and the 10th of January.
It does not appear that her prolonged confinement in bed, nor
the operation in the hospital, was due to the injury; but, ex-
cluding that from consideration, and taking into considera-
tion only the testimony of. Dr. Graham,. from which it may
fairly be inferred that she was confined to her bed for a period
of four months as a result of the injury, we do not think the

judgment is excessive. *Duncan v. Grand Rapids,* 121 Wis. 626, 99 N. W. 317; *Roy v. La Crosse,* 148 Wis. 266, 134 N. W. 363.

The defendant also seeks a reversal of the judgment because of the error of the court in directing a verdict in favor of the defendant *Wilkinson.* He claims that he is entitled to a reversal because, if the defendant *Wilkinson* were held, he would be entitled to contribution; that, upon the present state of the record, *Wilkinson* has been discharged from liability, and that this is *res adjudicata* as between *Schwab* and *Wilkinson* in any future action which may be brought by *Schwab* against *Wilkinson* for contribution. The respondent replies that, while the court directed a verdict in favor of *Wilkinson,* the judgment makes no disposition of the action as to him; that there is no judgment discharging him; that no appeal has been taken from any judgment to which he is a party; that he is not in court on this appeal, and that his rights cannot be considered.

*Wilkinson* was a party to this action. His liability to the plaintiff was in issue. A trial thereof was had, and the court directed a verdict in his favor. It is familiar that there can be but one judgment in the same action, and that judgment should dispose of all the issues. While *Wilkinson* is not mentioned in the judgment he is not held liable by the terms thereof; and, bearing in mind that the judgment is presumed to have disposed of all the issues, if we are to regard substance rather than form, the judgment as rendered will have to be construed as one in favor of *Wilkinson.* It is idle to say that *Wilkinson's* rights are not judicially determined in this action, and the judgment must be so construed. The notice of appeal was addressed to and served on *Wilkinson;* he is a party to this appeal, though in default, and the effect of the judgment as to him may be considered.

We think there was sufficient evidence in this case to take the question of *Wilkinson's* negligence to the jury, and that

the court erred in directing a verdict in his favor.    This be-
ing so, it becomes necessary to consider whether the defendant
*Schwab* is entitled to a reversal of the judgment by reason
thereof.

Appellant's argument, as before stated, is based upon the
proposition that the judgment is *res adjudicata* upon *Wilkin-
son's* liability to him in any future action which *Schwab* may
bring against *Wilkinson* for contribution.    We do not con-
sider the question of whether, under the facts shown, *Schwab*
would have a valid claim for contribution against *Wilkinson*
in any event.    That question can only arise when such ac-
tion shall be brought.    We must consider, however, whether
the judgment in this action, as we have construed the same, is
*res adjudicata* upon the question of defendant *Wilkinson's*
liability to the plaintiff in any future action which *Schwab*
may bring against *Wilkinson* for contribution, and, if so,
whether appellant is entitled to a reversal thereof in order to
protect him from such result.

Is the judgment rendered in this action *res adjudicata* in
an action for contribution between the codefendants?    It is
generally held that a judgment in favor of the plaintiff
against one or more codefendants is *res adjudicata* in subse-
quent actions between such codefendants so far as the ques-
tion of indebtedness of the defendants to the plaintiff is con-
cerned, but no farther.    An examination of the authorities,
however, will disclose that in the cases where it has been so
held the indebtedness was based upon contract binding the
defendants either jointly or jointly and severally, or where
there was a responsibility over, as in cases of principal and
surety, and the like.    Under such circumstances there is a
manifest propriety in holding the judgment in the original
action to be *res adjudicata* upon the question, because all de-
fendants, parties to such action, had equal right and oppor-
tunity to contest the issue and to appeal from an adverse de-
cision.    In such question all defendants had a common in-

terest, common rights, and common opportunities.   Furthermore, where the liability of the defendants to the plaintiff is founded upon a contract, whether written or resting in parol, the judgment in the original action establishes the status, the force and effect of the contract, and fixes the rights of all who are parties to the contract and parties to the action so far as its validity is concerned, and fixes the amount the plaintiff who sues thereon is entitled to recover.

We have been cited to no case in which it has been held that a judgment rendered in an action against separate tortfeasors is *res adjudicata* even upon the question of the liability of the defendants to the plaintiff in a subsequent action between.the tortfeasors, and our independent search has revealed but one such case.   In *Westfield G. & M. Co. v. Noblesville & E. G. R. Co.* 13 Ind. App. 481, 41 N. E. 955, the court expressed the opinion, under such circumstances as we are considering here, that while the rights of defendants as between themselves are not adjudicated, yet the fact of the liability of each to the plaintiff is adjudicated and determined both as between themselves and him and between each other.   It will be noticed that this is not the opinion of a court of last resort.   If it does not constitute the only authority in this country upon the question, we do not hesitate to say that it has received but scant judicial consideration, and we feel free to approach the question as an original one, and to adopt such conclusion as seems most logical and will best promote the interests and preserve the rights of litigants.

We see a striking difference between an action brought to hold independent tortfeasors and an action based upon a contract defining the liabilities of the defendants to the plaintiff. In the latter case the liability springs from a common source. It is defined by the same instrument.   It is established by the same language.   In truth and in fact, the liability is joint.   In the case of independent tortfeasors, such as here, the liability grows out of the independent conduct of each

defendant.   The term "joint tortfeasors," so often used, is misleading to say the least.   In cases like this they are not joint tortfeasors in any other sense than that they may be joined as defendants by one who has suffered injury or damage by reason of their independent but concurring wrong. They may both or all be liable for the injury which the plaintiff has sustained, but such liability does not arise from their joint action.   It arises from their independent action, which concurred to consummate the injury.   If it be found in such an action that A. is liable for the injury it does not follow that B. also is.   The liability of one to the plaintiff is not fixed when that of the other is ascertained, because their liability does not spring from a common source.   The liability of each grows out of an entirely independent state of facts. We believe that the foregoing is sufficient to indicate that the reason of the rule which makes the judgment in the original action against defendants, whose liabilities are founded upon contract, *res adjudicata* of the amount and nature of the indebtedness of all defendants to the plaintiff, does not apply in tort actions.

Having pointed this distinction between actions on contract and actions in tort, we will now inquire whether the situation presented meets the tests of fundamental essentials necessary to constitute *res adjudicata*.   We think it will fail to meet at least some such tests necessary to constitute it *res adjudicata* even upon the question of the indebtedness or liability of defendants to the plaintiff in a subsequent action for contribution between the defendants.

It is fundamental and universal that the former judgment proffered as *res adjudicata* in a subsequent suit must have been rendered in an action in which the parties to the subsequent suit were adverse parties.   What is meant by adverse parties scarcely needs definition.   Its significance is apparent from the expression itself.   They must be opposite parties to an issue between them.   The issue must be proffered by one

and controverted by the other. They must be arrayed on opposite sides of the issue. Manifestly the relation between *Schwab* and *Wilkinson* in the instant case does not respond to this requirement. There was no issue between *Schwab* and *Wilkinson*. The plaintiff was endeavoring to hold both. It was the endeavor of each to escape liability to the plaintiff. Each might have sought to escape this liability by fastening the blame upon the other, but in no other sense were they adverse parties. *Schwab* did not have control of the proceedings to enable him to exhaust the question of *Wilkinson's* liability. A situation apt to arise under similar circumstances is well illustrated by the case of *Ellis v. C. & N. W. R. Co.,* *ante,* p. 392, 167 N. W. 1048. In that case it appeared that the person injured sued the Wisconsin Traction, Light, Heat & Power Company and the Chicago & Northwestern Railway Company. Upon the trial plaintiff's efforts were vigorously addressed to the matter of establishing the negligence and liability of the traction company, no particular attention being paid to the railway company, resulting in a nonsuit as to the latter. The traction company being powerless to properly present the case against the railway company, Ellis, a stockholder and officer of the traction company, feeling that, if matters continued in such a pass, it would result in that company being held exclusively liable, purchased the claims of the injured persons in order to protect the rights of the traction company and to secure trial of the case against the railway company. Will any one argue that the traction company and the railway company were adverse parties in the original litigation? And is there any justice in saying that the traction company should be bound by the outcome of that suit in its future action for contribution against the railway company? It seems to us not, and that to do so would be a reproach to the law and to legal procedure.

In arriving at a determination of this question we may and should look to the consequences. An element essential to

constitute *res adjudicata* is a right of appeal from the judgment. If this judgment is to be held to be *res adjudicata* between *Schwab* and *Wilkinson,* it is apparent that *Schwab* has the right of appeal, because he is an aggrieved party. Sec. 3048, Stats. But what does that mean? It means that the plaintiff, who is entirely satisfied with the judgment she has secured, must be put to the burden, expense, and hardship of another trial of her action. Such a proceeding would be intolerable. It cannot be thought of. This plaintiff must not be subjected to any such burden because of a possible future controversy between the defendants upon the subject of contribution. The suggestion that the case should be reversed for this reason becomes more absurd when we reflect that a new trial of the action will settle nothing between *Schwab* and *Wilkinson.* Their rights are not at issue and cannot be until the judgment has been paid, because until that time an action for contribution does not accrue. The only thing to be accomplished by a new trial is to save defendant *Schwab* from a conclusive judicial determination of a single fact necessary for him to establish in order to recover contribution, namely, the fact that *Wilkinson's* negligence did not concur in producing the actionable wrong. If the defendant *Wilkinson* had not been made a party no question of *res adjudicata* would have arisen. Why will not justice be done by leaving *Schwab* and *Wilkinson* in the same position they would have been if he had not been made a party? It seems to us that not only the application of well established legal principles, but considerations of justice as well, dictate the conclusion that the judgment appealed from is not *res adjudicata* upon this question.

It follows that *Schwab* is not aggrieved by that feature of the judgment releasing *Wilkinson.* He cannot appeal therefrom and cannot secure a reversal and new trial because the court erred in releasing *Wilkinson.* The judgment will have no more force or effect in this respect than if *Wilkinson* had

not been made a party to the action. This leaves not only *Schwab*, but any independent tortfeasor, at liberty to bring his action for contribution against any and all persons who it is claimed were in part responsible for the wrong, and this whether they were made parties to the original action or not, and the judgment cannot be used by a party discharged in the original suit, in an action for contribution, for the purpose of showing that his negligence did not concur in producing the wrong.

While what has already been said is all that is necessary to dispose of the issues of this case, we deem it proper to refer briefly to the practice indulged in bringing in *Wilkinson* as a party defendant at the instance of *Schwab*. *Schwab's* action in this respect was based upon sec. 2610 of the Statutes, which makes provision for the bringing in of all parties necessary to a complete determination of the controversy, and especially upon the provision added thereto by sec. 6, ch. 219, Laws 1915, which provides that "A defendant who shows by affidavit that if he be held liable in the action he will have a right of action against a third person not a party to the action for the amount of the recovery against him, may, upon due notice to such person and to the opposing party, apply to the court for an order making such third person a party defendant in order that the rights of all parties may be finally settled in one action, *and the court may in its discretion make such order.*" We think that in cases such as this the court should exercise its discretion and deny the application.

From what has already been said it is plain that the interest of *Schwab* did not require the bringing in of *Wilkinson*. In such case the judgment rendered will not affect the right of the party held liable, to contribution from those whose wrongs contributed to the liability. The judgment rendered cannot dispose of the rights of the defendants as between each other upon the question of contribution. Such action will not accrue until the judgment has been paid. There can be

no cross-issue between the defendants upon this subject. The reason for the provisions of sec. 2610 is to enable the court to determine the rights of all interested in the controversy in the one action. From the very nature of things this cannot be done in an action of this nature. There is no purpose or object, therefore, in bringing in other parties who may also be liable. Their presence only adds confusion. This troublesome question would not have arisen if the court had denied the application to make *Wilkinson* a party to the action. Immemorially it has been the right of the plaintiff to make his own election in the matter of joining tortfeasors as defendants. It has been his privilege to institute his action against one or part or all tortfeasors responsible to him. We can see no reason why this venerable rule should be changed, nor ' why the plaintiff should be compelled to involuntarily litigate with parties not of his own choosing.

We are impelled to make these observations not only because the record here brings the matter forcibly to our attention, but because in the *Ellis Case* (*Ellis v. C. & N. W. R. Co., ante,* p. 392, 167 N. W. 1048), where it was held that contribution may be had between tortfeasors who are guilty of no intentional or conscious wrong, the same practice was indulged. As nothing was said concerning the practice in the opinion rendered in that case, it may be considered to have met with our approval. The dominant question there considered was whether there could be contribution between such tortfeasors. No point was made on the practice indulged and it was not considered by us. The *Ellis Case* and this may be regarded as supplementary of each other. The *Ellis Case* deals with the question of substantive law and this deals with the matter of procedure. There is no conflict between the two.

*By the Court.*—Judgment affirmed.