HAROLD E. ARNST

*vs.*

CHARLES L. ESTES AND THOMAS B. HARPER.

Somerset.     Opinion, September 13, 1939.

*Gower & Eames,*
*Frederick P. Hanford,* for plaintiff.
*F. Harold Dubord,* for defendant, Thomas B. Harper,
*Locke, Campbell & Reid,* for defendant, Charles L. Estes.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

DUNN, C. J. The plaintiff brought his action for tort against two defendants, namely, Charles L. Estes and Thomas B. Harper. He averred that they were owners and operators, respectively, of a taxi and an automobile, and that, though their duties to him were diverse and disconnected, yet their several neglects, concurred and united together, had been the efficient cause of injury to himself personally, and of damage to his property. He alleged the asserted wrongdoers jointly and severally liable to him in damages.

He amended his declaration, before the case was put on trial, by striking out all reference to several negligence. The defendants filed separate pleas of the general issue, and each set up that the negligence of the other defendant, not his, caused the accident. Contributory negligence was not in issue.

After plaintiff had put in his evidence, and rested his case, de-

fendant Estes' lawyer moved, in his behalf, (the grounds of the motion are not on the record,) judgment of nonsuit. The plaintiff, and as well defendant Harper, through their lawyers, interposed objection.

The motion was granted. Judgment of nonsuit was entered. Both plaintiff and defendant Harper reserved exception.

The trial proceeded, as to defendant Harper alone, to verdict against him.

His exception, and general motion for a new trial, have been argued. The plaintiff, on gaining the verdict, did not perfect the exception he had caused to be noted.

Under liberal rules as to joinder, defendants whose negligences coalesced to produce a single result have been joined in one action, and have become at once, by rather inaccurate usage, "joint tort-feasors." *Feneff* v. *Boston & Maine Railroad*, 196 Mass., 575, 82 N. E., 705; *Allison* v. *Hobbs*, 96 Me., 26, 51 A., 245; *Gordon* v. *Lee*, 133 Me., 361, 178 A., 353.

Exceptions to these rules are not here important.

Where, without concert, and although there was no common design, the negligences of two or more defendants concur in producing a single indivisible injury, such persons are jointly and severally liable for the whole damage. *Brown* v. *Atlantic Coast Line R. Co.*, 208 N. C., 57, 179 S. E., 25. If each contributes to the wrong, the proximate cause is the wrongful act in which they concurrently participate. *Brown* v. *Thayer*, 212 Mass., 392, 397, 99 N. E., 237. See, too, *Carpenter* v. *McElwain Co.*, 78 N. H., 118, 97 A., 560; *Lavenstein* v. *Maile*, 146 Va., 789, 132 S. E., 844; *McDonald* v. *Robinson*, 207 Iowa, 1293, 224 N. W., 820, 62 A. L. R., 1419; *Town of Sharon* v. *Anahama Realty Corp.*, 97 Vt., 336, 123 A., 192. It is like the instance of a man injured by falling into a hole dug partly by one person and partly by another. *Churchill* v. *Holt*, 131 Mass., 67.

A common case is that of two vehicles which collide to the hurt of a third person. The duties which are owed to the plaintiff by the defendants are distinct, and may not be similar in character or scope, but by far the greater number of courts now permit joinder in one action. It is difficult to imagine a more typical case of what is commonly called a joint tort, than the case of two drivers who, by their

simultaneous negligence, come into a collision, with harm following as a direct consequence to another. *Kilkenney* v. *Bockius*, 187 Fed., 382.

The causes, as the word concurring signifies, run together to the same end. *Herr* v. *Lebanon*, 149 Pa. St., 222, 24 A., 207. The term "joint tortfeasors" is misleading, to say the least. In cases such as plaintiff declares, the tortfeasors are joint in no other sense than that they may be joined as defendants by one who has suffered injury or damage by reason of their independent but concurring wrong. The right of action arises from disconnected conduct, which concurred to consummate the injury. The liability of each defendant grows out of an entirely variant set of facts. See Judge Owen's opinion in *Bakula* v. *Schwab*, 167 Wis., 546, 168 N. W., 378.

Entire liability in concurring cases rests upon the fact that each defendant is responsible for the loss, and the absence of any logical basis for apportionment. Article in 25 California Law Review, 413, May, 1937, on Joint Torts and Several Liability. A dictum in *Sessions* v. *Johnson*, 95 U. S., 347, 24 Law ed., 596, is to the same effect. There is no yardstick with which to measure the two acts of negligence, nor scales with which to weigh them. This is the language of Winslow, C. J., dissenting, in *Dohr* v. *Wisconsin Central R. Co.*, 144 Wis., 553, 554, 129 N. W., 252, 255.

Where two or more defendants are jointly charged for negligence, and a nonsuit is directed as to one of them, such nonsuit, even if erroneous as to the plaintiff, is not such error as may be invoked by the other defendant for a reversal. *McCamley* v. *Union Electric, etc., Co.*, (Mo. App.) 85 S. W., (2d) 200; *Rose* v. *Squires*, 101 N. J. L., 438, 128 A., 880.

Literally, scores of decisions can be quoted in such connection with various grounds given for the decision.

The joint liability a declaration sets out need not be proved. *Buddington* v. *Shearer*, 22 Pick., 427, 429. In every tort of this nature, there is an independent as well as a joint liability, and a joint tortfeasor, or what in a legal sense is the same thing, one standing in the same relation as a joint tortfeasor, cannot complain that, as to his co-defendant, there has been nonsuit, discontinuance or favorable verdict. *Rose* v. *Squires*, supra; *Hurley* v. *New York, etc., Co.*, 43 N. Y. S., 259; *Wallace* v. *Third Avenue R. Co.*, 55 N.

Y. S., 132; 1 Chitty, *86; Huddy, Automobile Law, 7–8, p. 372;
*Lindman* v. *Kansas City*, 308 Mo., 161, 271 S. W., 516; *Matthews*
v. *Delaware L. & W. R. Co.*, 56 N. J. L., 34, 27 A., 919; *Lovelace* v.
*Miller*, 150 Ala., 422, 43 So., 734; *Goekel* v. *Erie R. Co.*, 100 N. J.
L., 279, 126 A., 446; 11 Encyc. Plead. & Prac., 852; 15 Encyc.
Plead. & Prac., 583; 18 C. J., 1177; *McCamley* v. *Electric Co.*,
supra; *Hefferon* v. *Reeves*, 140 Minn., 505, 167 N. W., 423; *Stith*
v. *Newberry Co.*, 336 Mo., 467, 79 S. W. (2d), 447; *Chr. Heurich*
*Brewing Co.* v. *McGavin*, 16 Fed. (2d), 334; *Rhodes* v. *Southern*
*Ry. Co.*, 139 S. C., 139, 137 S. E., 434; *Upham* v. *Mickleson*
(Iowa) 157 N. W., 264; *Wilson* v. *Morris*, 108 Neb., 255, 187 N.
W., 805; *Edwards* v. *Great Northern Ry. Co.*, 42 N. D., 154, 171
N. W., 873; *Southern Hardware, etc., Co.*, v. *Block Bros.*, 163
Ala., 81, 50 So., 1036; *Halsey* v. *Minnesota-South Carolina, etc.,*
*Co.*, 174 S. C., 97, 177 S. E., 29, 100 A. L. R., 1; *Munroe* v. *Car-*
*lisle*, 176 Mass., 199, 57 N. E., 332; *Oulighan, Admr.* v. *Butler*, 189
Mass., 287, 75 N. E., 726.

Logically, runs a note in the *Harvard Law Review*, (Vol. 18,
page 229,) once having made his choice, an injured party cannot
turn a joint into a several action, citing *Wiest* v. *Electric, etc., Co.*,
200 Pa. St., 148, 49 A., 891, which so holds. Modern practice gen-
erally, however, considers the action both joint and several. Torts
are in their nature several. 1 Chitty, *supra*; *Hayden* v. *Nott*, 9
Conn., 367, 371. The opinion in *Matthews* v. *Delaware L. & W. R.*
*Co.*, supra, clearly presents the majority view as to the law on the
question.

A motion for a nonsuit is tantamount to a demurrer to evidence.
*Sykes* v. *Maine Central Railroad Company*, 111 Me., 182, 88 A.,
478. In ordering a nonsuit for insufficiency of plaintiff's evidence,
the court simply declares the law applicable thereto. It says the
facts proven fail to cast liability on defendant, but the court does
not, nor could, attempt to determine the actual facts of the case,
nor is judgment of nonsuit bar to a subsequent action for the same
cause. *Pendergrass* v. *York Mfg. Co.*, 76 Me., 509.

The common-law rule applicable in actions of assumpsit, that if
one defendant is not proved liable, the verdict must be in favor of
all the defendants, does not apply in tort actions. *Bakula* v.
*Schwab*, supra; *Gillerson* v. *Small*, 45 Me., 17. Where the action

is on a joint contract, the statutes in this jurisdiction provide for individual judgments if the defendants are not found jointly liable. R. S., Chap. 96, Sec. 105; *Day* v. *Scribner*, 127 Me., 187, 142 A., 727.

The *Davis* v. *Caswell* case, 50 Me., 294, referred to in the brief of counsel for defendant Harper, is not opposed to this view. The Davis case holds that an action for joint trespass, meaning a trespass committed by the connected action of two or more persons, or by the action of one or more of them with the authority or assent of the others, cannot be sustained by evidence that, for his own purpose or convenience, one person went upon the premises of another without invitation, express or implied. That case is the converse of this one.

In the exception, there is no legal merit.

It is denied, under the new trial motion, that evidence sufficiently sustains a verdict for plaintiff. The ground that the verdict be set aside because of excessiveness in the award of damages, has not been argued, and is considered as abandoned.

There was, on June 29, 1937, and is yet, a public highway, the course whereof, through the business part of Canaan village, is generally east and west; the way is designated Main Street. Over the full width of the traveled portion of the street is a coating of tar; on each side of the tar, for several feet, is a graveled surface.

On the south side of the road, and on the west side of Carrabassett Stream, was a building occupied by plaintiff for his filling station and garage. Almost opposite, on the north side, was the Wentworth store, this building also accommodating the post office.

Defendant Estes' taxi, which he had driven from some eastward point, had been brought to a stop, off the roadway, in front of the post office. Presently, its owner and driver started the machine, his intention being to make a U-turn, and drive back upon the road in the easterly direction.

The taxi was upon the tarred surface, and within and headed across the lane for traffic westward bound, (the evidence as to how far, and whether the machine was still in motion, is in conflict,) when it and an automobile proceeding on its own side of the street, in a westerly direction, collided. Defendant Harper was driving this car.

The right rear end of the Harper vehicle struck the left front fender of the Estes taxi; upon that, the Harper automobile caromed into plaintiff's garage, and partially demolished it; moreover, the automobile struck plaintiff, who was in the garage attending to his own affairs; he sustained substantial bodily hurt. The jury awarded the proof to the plaintiff, and found the damages $2,711.18.

Himself guilty of no contributory negligence, plaintiff's right to recover was complete as to a defendant liable to make compensation for the loss sustained. *Bakula* v. *Schwab*, supra.

If, on a rational weighing of the contradictory evidence, the defendant Harper was guilty of a want of that care which would have been exercised by a man of ordinary care and prudence under the circumstances, he was guilty of negligence. The standard of negligence is that of reasonable care.

An abridged sketch of the testimony touching liability, detailing first that given by witnesses called by plaintiff, will afford a background from which to understand the evidentiary showing as the printed record discloses it.

Arvelle Tuttle, aged seventeen years, said, while on the witness stand, that he heard tires squeak, and, on looking from inside the Arnst garage, that he saw the (Harper) car coming down the road "kind of sidling and just about to hit the other (Estes) car." The "cars hit" and Harper's car came across the street. The Harper automobile, according to the testimony of this witness, was, on the squeaking of the tires arresting his attention, twenty-five or thirty feet from the Estes vehicle, and coming at an hourly rate of twenty-five to thirty miles. Estes' taxi was then in the road, at stop, headed straight across.

Alpheus Nason was in the taxi. He did not see the Harper car coming; does not know if the taxi had, at the time of collision, been already stopped. He says the projection of the taxi into the road was a foot or a foot and a half.

Sherman Hallowell, of the State Police, arrived after the accident. The taxi was into the tarred highway some forty-five inches. Estes, so the officer bears witness, said that if his car was moving, about which he (Estes) was uncertain, its speed was three or four miles the hour. The Harper car tracks, as witness observed them, were at almost right angles to the road.

Virginia Whidden was on the rear seat of the taxi. She said, in testifying, that through the side window, she glimpsed the automobile, (Harper's) rolling very fast; that, at the time of the collision, the taxi was standing still.

Plaintiff himself, while on the stand, did not testify on the score of liability.

Nonsuit was, as noticed above, imposed at the close of the plaintiff's evidence, and the resting of his case.

Defendant Harper testified that as he approached at a twenty-five mile rate, the taxi very suddenly turned out toward the road; that he applied his brakes and bore to the left; "by that time I was hit." Witness said that he did not have time to swerve and avoid collision. The Estes taxi was three or four feet onto the road, and moving, when the cars hit, he stated.

Della Harper, wife of defendant, was riding in his automobile. Her testimony is that their car was practically abreast of the taxi, — closer than ten feet, — when the latter started onto the road. In the rest of her testimony, she corroborated, in essential details, the statements of her husband.

Elden Salisbury, nineteen years old, called by defendant, said while witnessing, that from his nearby position on the street, which he was about to cross, and hence was giving his attention to vehicular positions, he saw the (Harper) car, its speed twenty-five or thirty miles, and its distance thirty or thirty-five feet, when Estes' taxi turned into the highway, and proceeded about four feet. Witness was not certain that the Estes vehicle stopped. The accident happened "all in a flash"; the Harper car struck the Estes car, turned slightly, and went completely across the road out of control.

In rebuttal, William Tuttle, who gave his age sixty-four years, testified that he was sitting in the farthest front corner of the Wentworth store, near a window, listening to a radio, when, glancing out, he noticed the (Harper) car traveling down the road at, as he estimated, forty miles the hour. Estes' taxi, on the authority of this witness, was about one foot on the black road.

And, finally, Charles L. Estes, in favor of whom as defendant, the plaintiff had been nonsuited, gives testimony that, on turning into the road, and then looking for the very first time in its direc-

tion, he saw what proved to be the Harper automobile. It was one hundred feet away, oncoming; thereupon, he brought his taxi to a stop; one wheel was "on the black."

A verdict clearly against the weight of the evidence should be set aside, and a new trial granted.

The weight of evidence depends on its effect in inducing belief. The question is not on which side are the witnesses more numerous, but what, in convincing power, is outweighing.

The established rule is — it is the province of the jury to weigh conflicting testimony; and the court will be slow in disturbing a verdict unless there is sufficient to make it appear that the verdict was clearly against the weight of evidence. *Pollard* v. *Grand Trunk Railway Co.*, 62 Me., 93.

In the case just cited, a verdict rested on no more secure foundation than the testimony of a deeply interested party, in opposition to that of disinterested, intelligent and unimpeached witnesses, was regarded as manifestly against the weight of evidence.

It is to be borne in mind that Charles L. Estes is a deeply interested witness. Counsel for him, as an original party defendant, are, in effort to sustain the trial court entry of nonsuit, active to the extent of arguing at the bar of this court, and of submitting a brief.

To support a verdict, there must be evidence of real worth. *Hall* v. *Cumberland County, etc., Co.*, 123 Me., 202, 122 A., 418. The evidence must be reasonable, and so consistent with the circumstances and probabilities in the case as to, on contrast with and weighing against the opposing evidence, raise a fair presumption of its truth. Overwhelmed by opposing evidence, a verdict cannot stand. *Moulton* v. *Sanford, etc., Railway Co.*, 99 Me., 508, 59 A., 1023; *Cyr* v. *Landry*, 114 Me., 188, 95 A., 883; *Harmon* v. *Cumberland County, etc., Co.*, 124 Me., 418, 130 A., 273; *Raymond* v. *Eldred*, 127 Me., 11, 140 A., 608; *Page* v. *Moulton*, 127 Me., 80, 141 A., 183; *Goudreau* v. *Ouelette*, 133 Me., 365, 178 A., 355. The decision reached by triers of fact must have a sound basis, and be arrived at by a logical process in order to be accepted as final in a last court of resort. *Emery* v. *Fisher*, 128 Me., 453, 148 A., 677. The essential common sense of that is evident. To hold otherwise would be a mockery of justice. *Pollard* v. *Railway Company*, supra.

See, too, *Dexter v. Canton Toll-Bridge Co.*, 79 Me., 563, 566, 12 A., 547.

That plaintiff was severely injured is unquestioned; that he in any manner contributed to his injury, no one intimates; however, a perusal of the record compels the conclusion that the verdict of the jury did not proceed from an unimpassioned and impartial consideration, in all its legal relations, of all the evidence in the case.

*Exception overruled.*
*Motion sustained.*
*New trial granted.*