GIES, by general guardian, and another, Plaintiffs, v. NISSEN CORPORATION, Defendant: MOUNT MARY COLLEGE and another, Defendants and Third-Party Plaintiffs and Appellants: C. A. BURGHARDT & SONS, Third-Party Defendant and Respondent: MILWAUKEE SPORTING GOODS COMPANY, Third-Party Defendant.

*No. 52. Argued January 30, 1973.—Decided February 27, 1973.*
(Also reported in 204 N. W. 2d 519.)

For the appellants there were briefs by *Borgelt, Powell, Peterson & Frauen*, attorneys, and *Kurt H. Frauen* and *Thomas N. Klug* of counsel, all of Milwaukee, and oral argument by *Mr. Klug*.

For the respondent there was a brief by *Kluwin, Dunphy, Hankin & Hayes*, attorneys, and *Norman J. Baker* of counsel, all of Milwaukee, and oral argument by *Gerald T. Hayes*.

CONNOR T. HANSEN, J.  We set forth the facts pertinent to this appeal. Plaintiffs, Mary Evelyn Gies and her mother, Mary J. Gies, brought suit against the defendants and third-party plaintiffs—appellants, Mount Mary College and Colleen Jacobson, and the defendant, Nissen Corporation. This action seeks to recover damages for personal injuries sustained by the plaintiff, Mary Evelyn Gies, while performing on a trampoline at a time when she was a student at Mount Mary College. Colleen Jacobson was the instructor of the gym class during which the plaintiff, Mary Evelyn Gies, was injured. Nissen Corporation was the manufacturer of the trampoline.

Plaintiffs alleged that the injuries suffered by the plaintiff, Mary Evelyn Gies, were caused by the negligence of the defendants. The complaint states that the defendant Mount Mary College was negligent in failing to properly instruct, supervise or control their student activities; in failing to provide the necessary safety devices; in failing to warn their students and the students' parents as to the inherent dangers involved in using such equipment; in requiring the plaintiff, Mary Evelyn Gies, to participate, knowing she was incapable of performing the activity, and in failing to offer an alternative activity; in furnishing an unqualified instructor; and in permitting the use of a defective trampoline. Defendant, Colleen Jacobson, is alleged to be negligent in her manner and method of conducting the activities upon the trampoline. Plaintiffs further alleged that Nissen Corporation was negligent in misrepresentations as to the trampoline's safety; in failing to give adequate warnings as to the trampoline's safety; in failing to furnish adequate instructional material; in failing to design the trampoline so as to prevent such injury; and in failing to provide and instruct, at the time of sale, as to the necessary safety equipment.

February 4, 1970, answer was filed by appellants denying all allegations of negligence and alleging, as an affirmative defense, the negligence of the plaintiff, Mary Evelyn Gies.

Burghardt is a corporation engaged in the business of selling, at retail, sporting goods equipment. Approximately nine years before Mary Evelyn Gies was injured, Burghardt sold the trampoline to Mount Mary College.

November 9, 1970, the appellants moved for an order impleading Burghardt as third-party defendant, alleging indemnification, breach of warranty and/or contribution. The motion was granted. After certain motions by Burghardt, not relevant to this appeal, and on March 16, 1971, appellants served a "third-party complaint" [1] on Burghardt. This complaint was filed March 23, 1971.

March 11, 1971, the plaintiffs filed an amended complaint naming Burghardt as a party-defendant to the original action. In addition to the allegations of negligence as to the defendant, Nissen Corporation, and appellants, Mount Mary College and Colleen Jacobson, as previously stated, the complaint alleged that Burghardt was negligent in certain misrepresentations as to the trampoline's safety; in selling the trampoline without adequate warnings as to the danger in the use thereof; in failing to furnish adequate instructional material; in selling a defective trampoline; and in failing to provide adequate safety equipment and instructions as to their use.

August 23, 1971, Burghardt's answer to plaintiffs' amended complaint was filed denying liability for any injuries suffered by the plaintiff, Mary Evelyn Gies.

September 1, 1971, Burghardt moved for summary judgment to dismiss plaintiffs' amended complaint as to

[1] More properly denominated a cross complaint. *See* sec. 263.15, Stats. Sub. (1) thereof provides: ". . . Such relief may be demanded by a cross complaint or a counterclaim . . . ."

Burghardt. Notice of this motion and time of hearing was given to all parties, including the appellants. An affidavit of Carl A. Burghardt, president of Burghardt, was filed in support of said motion for summary judgment. No affidavits were filed by the plaintiffs or the appellants in opposition to Burghardt's motion for summary judgment.

September 13, 1971, following the submission of briefs and a hearing at which all parties, including the appellants, appeared, the trial court granted the motion of Burghardt for summary judgment dismissing the complaint of the plaintiffs as to Burghardt. Judgment was entered October 8, 1971. No appeal was taken from this judgment.

September 20, 1971, Burghardt, as "third-party" defendant, moved for summary judgment to dismiss the "third-party complaint" of the appellants. For the purpose of the motion, appellants' complaint was treated as a cross complaint for contribution and/or indemnity. The affidavit of Carl A. Burghardt was again filed in support of the motion, and affidavits by the appellants were filed in opposition thereto. Appellants also filed a motion for default judgment against Burghardt for failing to file a responsive pleading to the "third-party complaint."

January 11, 1972, the trial court ordered that the motion of Burghardt for summary judgment be granted, dismissing appellants' "third-party complaint" on its merits, and denied appellants' motion for default judgment. Judgment was entered January 24, 1972. The appellants have appealed from this judgment. The plaintiffs, Mary Evelyn Gies and Mary J. Gies, are not parties to this appeal.

*Issue.*

The dispositive issue on the appeal is whether the prior judgment, granting Burghardt's motion for sum-

mary judgment against the plaintiffs and dismissing their complaint as to it, is res judicata and determinative of all issues raised in Burghardt's subsequent motion for summary judgment as to the "third-party complaint" of the appellants.

In granting Burghardt's motion against the plaintiffs for summary judgment and dismissing their complaint as to Burghardt, the trial court determined that Burghardt, as the retailer and seller of the trampoline, did not cause and owed no liability to the plaintiffs for the injuries they sustained. No appeal was taken from this judgment and the time for such has now run. What effect this prior judgment has upon the issues raised in appellants' "third-party complaint" must be determined on this appeal.

Appellants, after alleging various negligent acts and omissions on the part of Burghardt, including furnishing a defective trampoline, alleged that in the event it was found at trial that they sustained any liability to the plaintiffs and that said liability arose out of the condition of the trampoline or related equipment or of any acts or omissions with regard to the operation and use thereof, that they would be entitled to contribution from Burghardt toward the amount of any such liability.

Under the amended complaint of the plaintiffs, the appellants and Burghardt were alleged to be joint tort-feasors. One alleged to be a joint tort-feasor may by cross complaint have the issue of contribution settled in the same action which determines the liability to the plaintiffs. *Michel v. McKenna* (1929), 199 Wis. 608, 227 N. W. 396. The relief demanded is that in the event the defendants are found to be jointly guilty of actionable negligence, and the appellants pay the judgment, that the defendant, Burghardt, be required to pay its proportionate share of the judgment to the appellants. It is well settled that common liability to a third person is an essential element of contribution. *Bauman v.*

*Gilbertson* (1959), 7 Wis. 2d 467, 96 N. W. 2d 854; *Neuser v. Thelen* (1932), 209 Wis. 262, 244 N. W. 801; *Michel v. McKenna, supra.*

The issue presented in this case is whether the trial court's finding, upon the summary judgment motion of Burghardt against the plaintiffs' complaint, that Burghardt is not liable to the plaintiffs, is determinative of the issue of contribution between the codefendants, Burghardt and the appellants, on Burghardt's subsequent motion for summary judgment to dismiss the cross complaint of the appellants.

Appellants correctly argue that joint liability is based upon the facts as they existed at the time of the accident and not at the time one tort-feasor seeks contribution from another tort-feasor.[2] However, this general statement is of no avail to the appellants.

It is evident that the trial court based its dismissal of plaintiffs' amended complaint as to Burghardt upon the fact that Burghardt was not liable to the plaintiffs at the time of the accident, and that the dismissal was not based upon a defense of Burghardt arising subsequent to the accident. We reach this conclusion after examination of Burghardt's affidavit in support of their motion for summary judgment to dismiss the plaintiffs' amended complaint and the trial court's decision upon Burghardt's motion for summary judgment to dismiss appellants' cross complaint. Thus, as to the injuries sustained by the plaintiffs, the trial court determined that no liability ever existed as to Burghardt. Therefore, such a judgment, if binding upon the appellants would defeat their claim for contribution.

In determining the criteria for the application of the doctrines of res judicata and collateral estoppel to subsequent actions between codefendants as to their liability

[2] *Ainsworth v. Berg* (1948), 253 Wis. 438, 445, 34 N. W. 2d 790, 35 N. W. 2d 911. *State Farm Mut. Automobile Ins. Co. v. Continental Casualty Co.* (1953), 264 Wis. 493, 503, 504, 59 N. W. 2d 425.

*inter se* where in a prior action they were jointly sued for the injury to another person, it is generally held that a prior judgment is not conclusive in the subsequent action unless the codefendants occupied adversary positions in the prior action and actually litigated therein the issue of their liability *inter se* as well as the issue of their liability to the injured party.[3]

In *Bakula v. Schwab* (1918), 167 Wis. 546, 168 N. W. 378, the plaintiff was injured while a passenger for hire in an automobile operated by the defendant Schwab. As the vehicle approached an intersection it veered to the left to pass a horse and buggy driven by one Wilkinson. As the automobile was about to pass, Wilkinson turned to the left for the purpose of making a left-hand turn at the intersection, compelling Schwab to swerve further to the left in order to avoid collision. The automobile ran off the road and the plaintiff sustained personal injuries as a result thereof. The plaintiff brought suit against Schwab. Upon motion of Schwab, Wilkinson was made a party defendant, and the parties proceeded to trial. No cross complaint was filed against either of the defendants and there was no issue between them. The jury found Schwab negligent and Wilkinson was discharged from any liability. Schwab appealed and sought reversal, alleging as error the court's directing a verdict in favor of Wilkinson. This court, at page 553, stated that the issue, as raised upon appeal, was:

". . . [W]hether the judgment in this action, as we have construed the same, is *res adjudicata* upon the question of defendant *Wilkinson's* liability to the plaintiff in any future action which *Schwab* may bring against *Wilkinson* for contribution, and, if so, whether appellant is entitled to a reversal thereof in order to protect him from such result."

---

[3] *See:* Annot. (1969), *Judgment In Action Against Codefendants For Injury Or Death Of Person, Or For Damage To Property, As Res Judicata In Subsequent Action Between Codefendants As To Their Liability Inter Se,* 24 A. L. R. 3d 318, 323, sec. 2.

At pages 555, 556 and 557, this court stated:

"It is fundamental and universal that the former judgment proffered as *res adjudicata* in a subsequent suit must have been rendered in an action in which the parties to the subsequent suit were adverse parties. What is meant by adverse parties scarcely needs definition. Its significance is apparent from the expression itself. They must be opposite parties to an issue between them. The issue must be proffered by one and controverted by the other. They must be arrayed on opposite sides of the issue. Manifestly the relation between *Schwab* and *Wilkinson* in the instant case does not respond to this requirement. There was no issue between *Schwab* and *Wilkinson*. The plaintiff was endeavoring to hold both. It was the endeavor of each to escape liability to the plaintiff. Each might have sought to escape this liability by fastening the blame upon the other, but in no other sense were they adverse parties. *Schwab* did not have control of the proceedings to enable him to exhaust the question of *Wilkinson's* liability. . . .

"In arriving at a determination of this question we may and should look to the consequences. An element essential to constitute *res adjudicata* is a right of appeal from the judgment. If this judgment is to be held to be *res adjudicata* between *Schwab* and *Wilkinson,* it is apparent that *Schwab* has the right of appeal, because he is an aggrieved party. Sec. 3048, Stats. But what does that mean? It means that the plaintiff, who is entirely satisfied with the judgment she has secured, must be put to the burden, expense, and hardship of another trial of her action. Such a proceeding would be intolerable. It cannot be thought of. This plaintiff must not be subjected to any such burden because of a possible future controversy between the defendants upon the subject of contribution. . . ."

In *Wait v. Pierce* (1926), 191 Wis. 202, 209 N. W. 475, 210 N. W. 822, this court rejected much of the reasoning in *Bakula, supra,* and the holding therein was modified. In *Wait, supra,* the plaintiff charged the defendants (partners engaged in operating a garage) with liability for certain injuries sustained by her by reason of the

negligence of one of the partners' employees. The partners, upon an allegation that her husband was jointly liable with them, moved that the husband be made a party-defendant. The motion was granted. The partners thereupon filed a cross complaint against the husband and prayed for contribution if they and the husband were found jointly liable. After reciting the facts of the *Bakula Case,* this court, on pages 229 and 230, stated:

". . . The question considered upon the appeal, . . . was whether Schwab had the right to have the judgment in favor of Wilkinson reversed, and it was held that Schwab did not have such right because as between Schwab and Wilkinson the judgment in favor of Wilkinson was not *res adjudicata.* Language is used in the opinion rather broader than the issues in the case warrant. It is said: 'We have been cited to no case in which it has been held that a judgment rendered in an action against separate tortfeasors is *res adjudicata* even upon the question of the liability of the defendants to the plaintiff in a subsequent action between the tortfeasors,' and it was held that the rule applying in contract cases as to the liability of codefendants did not apply in tort actions. As we have seen, the right of one joint tortfeasor to contribution from another joint tortfeasor arises out of a common liability. It is only when they have been subjected to a common liability and one joint tortfeasor has paid more than his equitable share of the common obligation that the right of contribution arises. To hold that under such circumstances a judgment which establishes the common liability is not *res adjudicata* upon that question is to ignore the principle upon which the right to contribution rests. In the *Bakula Case, supra,* there was no cross-complaint and no issue was made between the codefendants. It was therefore held that the defendant Schwab was not concluded by the judgment in Wilkinson's favor. So far as the *Bakula Case* holds that where one joint tortfeasor discharges more than his equitable share of a liability resting upon him and another joint tortfeasor by a single judgment, the question of liability of the other joint tortfeasor to the plaintiff is not *res adjudicata,* it must be and is modified."

At pages 231 and 232, the court went further to state:

"In this case the copartners and *Wait* may be held to be, under the allegations of the cross-complaint, joint tortfeasors. The partners asked to have *Wait* made a party in order that 'the entire controversy may be settled in one action,' and the court quite properly, in the exercise of its discretion, held that *Wait* should be made such party. While it is true the partners have no complete cause of action against *Wait* until they have been legally compelled to satisfy more than their equitable share of a common liability, no greater difficulty exists in providing for the ultimate settlement by a contingent judgment of all controversies arising out of the action than exists in a like case where the defendant, if held liable to the plaintiff and compelled to discharge his liability, will have a claim over against a third party, and that third party is brought in and subjected to liability in the same action. If it be held that the partners and the defendant *Wait* are joint tortfeasors, and if each of the joint tortfeasors pays his equitable share of the judgment, no further action will be necessary. On the other hand, if one of the joint tortfeasors is compelled to pay more than his equitable share, no reason exists why his rights against the other tortfeasor should not be settled in this action contingent upon such payment."

In the instant case, plaintiffs brought suit against the appellants to recover personal injuries allegedly caused by the negligence of appellants. The plaintiffs amended their complaint and made Burghardt a party-defendant. Appellants then filed a cross complaint seeking contribution from Burghardt, resting their claim, in part, upon the joint liability of the appellants and Burghardt to the plaintiffs.

There is no reason why the trial court's determination, upon Burghardt's motion for summary judgment against the plaintiffs, that Burghardt was not liable to the plaintiffs, should not be res judicata and controlling as to the same issue raised in Burghardt's subsequent motion for summary judgment against the cross complaint

of the appellants. The issue of Burghardt's liability to the plaintiffs was crucial to the success of both, plaintiffs' and appellants', causes of action against Burghardt. The issue would of necessity have had to have been decided in both actions.

Although Burghardt filed no responsive pleading as to appellants' cross complaint, the issue of Burghardt's liability to the plaintiffs was joined between them.[4] Burghardt and the appellants were arrayed on opposite sides of the issue. The issue was proffered by appellants and controverted by Burghardt. Burghardt and appellants were adverse parties thereto.

Appellants had notice of Burghardt's motion for summary judgment against the plaintiffs and not only had the right to appear but did appear at the hearing thereon. Although appellants chose not to file affidavits in opposition to Burghardt's motion, they had the right. Sec. 270.635 (2), Stats., provides that affidavits may be submitted by "any person who has knowledge thereof."

Appellants cannot sit back and observe the contest between the plaintiffs and Burghardt, upon an issue so vital to their own cause, and, in the event Burghardt succeeds, force it and the court to relitigate the issue. The consequence of such a proceeding could well be a hollow victory for Burghardt over the plaintiffs in the first instance, if it is determined in the second that Burghardt is contingently liable to appellants for contribution. Such a proceeding would raise the disdainful likelihood of repetitious motions, filings of affidavits, hearings and, ultimately, appeals to this court; all producing little justice and much delay.

The appellants, having notice and opportunity to be heard, as to Burghardt's motion for summary judgment

---

[4] No answer need be made to a cross complaint or third-party complaint seeking contribution, the allegations thereof are deemed controverted. Sec. 263.15 (3), Stats.

against the plaintiffs and choosing not to participate, cannot now complain as to the trial court's decision thereon. The trial court's determination on the issue of Burghardt's alleged negligence and liability to the plaintiffs, having been made upon Burghardt's motion for summary judgment against the plaintiffs, is res judicata upon the same issue as raised in appellants' cross complaint for contribution. The cross complaint of the appellants as it relates to their prayer for contribution was properly dismissed.

In addition to contribution, appellants' cross complaint prays for indemnification and damages for breach of warranty. However, these additional allegations do not compel a reversal of the trial court.

If there was a contract of indemnification between Burghardt and the appellants, Burghardt's motion for summary judgment against the plaintiffs would not have resolved this issue between Burghardt and the appellants. *Cadden v. Milwaukee County* (1969), 44 Wis. 2d 341, 171 N. W. 2d 360. However, there are no allegations in appellants' complaint as to any contract between Burghardt and appellants for indemnification.

Furthermore, even if the appellants could prove the allegations as set forth in the cross complaint, they would not be entitled to indemnification from Burghardt. Under the allegations of the cross complaint, appellants have alleged Burghardt as negligent and negligent per se under this state's "strict liability" theory as set forth in *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55. This court in *Dippel, supra,* at pages 459 and 460, carefully defined what it meant by the term "strict liability" in tort by stating:

"The term *strict* liability in tort might be misconstrued and, if so, would be a misnomer. Strict liability does not make the manufacturer or seller an insurer nor does it impose absolute liability. From the plaintiff's point of view the most beneficial aspect of the rule is that it

relieves him of proving specific acts of negligence and protects him from the defenses of notice of breach, disclaimer, and lack of privity in the implied warranty concepts of sales and contracts."

This court went further to state that the defense of contributory negligence would be available to the seller. At pages 461 and 462, this court made it clear that the negligence imposed under *Dippel, supra,* could be compared with the contributory negligence of a plaintiff:

"It might be contended that the strict liability of the seller of a defective product is not negligence and therefore cannot be compared with the contributory negligence of the plaintiff. The liability imposed is not grounded upon a failure to exercise ordinary care with its necessary element of foreseeability; it is much more akin to negligence per se.

"Negligence per se was defined in *Osborne v. Montgomery* (1931), 203 Wis. 223, 240, 234 N. W. 372, as follows:

" 'We come now to a consideration of that class of cases where foreseeability is not an element of negligence, —a more accurate statement would be to that class of cases where the defendant is foreclosed or concluded upon the question of foreseeability. In all those cases where it is said that, the performance of the wrongful act being admitted, the defendant is guilty of negligence as a matter of law or that the act is negligent *per se,* the case is one which admits of no question as to reasonable anticipation or foreseeability. These cases are those in the main where the act amounts to a violation of a standard of care fixed by statute (ordinance) or previous decision. The employment of a minor child in violation of the statute is an instance of the first kind, and the failure to stop, look, and listen is the most common illustration of the second type. It is apparent that there must always be a causal relation between the act complained of and the injury sustained; otherwise liability does not follow.'

"Comparison of the failure to exercise ordinary care and negligence per se is so common and widely approved in our jurisdiction as to need no citation."

Thus, under *Dippel, supra,* the negligence of the seller and the plaintiff can be compared. There is no reason why the negligence of the seller and an alleged joint tort-feasor cannot be compared.

This court, in *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105, adopted comparative negligence as the sole measure of contribution between co-tort-feasors.

The granting of indemnity in any situation represents a judicial choice of policy. *Jacobs v. General Accident Fire & Life Assur. Corp.* (1961), 14 Wis. 2d 1, 11, 109 N. W. 2d 462. Appellants urge that this court shift the entire burden upon the seller. This court in *Pachowitz v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 383, 386, 202 N. W. 2d 268, in rejecting a rule that would have permitted one "passively" negligent to obtain indemnity from one "actively" negligent, stated:

"Such an all-or-nothing result between negligent co-tort-feasors would be contrary to the Wisconsin concept of imposing liability and awarding recovery in proportion to the percentage of causal negligence attributable to each of the co-tort-feasors. . . ."

Under the allegations of the appellants' cross complaint, appellants are not entitled to indemnification from the seller, Burghardt. Their cause of action was one for contribution.

Appellants contend that in the event it is found upon trial that Burghardt breached certain enumerated duties, such a failure would amount to a breach of warranty entitling the appellants to all damages arising out of such breach of warranty, including any liability which the appellants may sustain to the plaintiffs. Here again, in spite of the language used in the pleadings, appellants are actually seeking indemnification. Under the pleadings in this case, the further allegation of breach of warranty adds nothing once "strict liability" as set forth

in *Dippel, supra,* has been alleged. If Burghardt was shown negligent as to some implied warranty, such negligence would be compared to that of the appellants.

The trial court properly dismissed appellants' cross complaint upon Burghardt's motion for summary judgment. Where there is no issue of fact that should be tried, or where there is an issue of law that can be determined so as to conclude the case, summary judgment should be used. *Olston v. Hallock* (1972), 55 Wis. 2d 687, 201 N. W. 2d 35.

The trial court, having properly decided the controlling issue of law, granted summary judgment in favor of Burghardt against appellants, and we affirm.

Since our resolution of these issues disposes of this appeal, we do not further consider the other issues raised by the parties.

*By the Court.*—Judgment affirmed.