WISCONSIN PUBLIC SERVICE CORPORATION, Plaintiff,

ASSOCIATED ELECTRIC & GAS INSURANCE SERVICES LIMITED (AEGIS), Plaintiff-Appellant-Petitioner,

v.

ARBY CONSTRUCTION, INC., Defendant-Respondent.

Supreme Court

*No. 2010AP878. Oral argument January 12, 2012.*
*—Decided July 11, 2012.*

2012 WI 87

(Also reported in 818 N.W.2d 863.)

544

545

For the plaintiff-appellant-petitioner there were briefs filed by *W. Thomas Terwilliger, Cassandra B. Westgate* and *Terwilliger, Wakeen, Piehler & Conway, S.C.,* Wausau, and oral argument by *W. Thomas Terwilliger* and *Cassandra B. Westgate.*

For the defendant-respondent there was a brief filed by *Charles P. Graupner, Aaron H. Kastens, Adam E. Witkov* and *Michael Best & Friedrich, LLP,* Milwaukee, and oral argument by *Charles P. Graupner.*

¶ 1.   DAVID T. PROSSER, J. This is a review of a published decision of the court of appeals, *Wisconsin Public Service Corp. v. Arby Construction, Inc.,* 2011 WI App 65, 333 Wis. 2d 184, 798 N.W.2d 715, affirming an order of the Brown County Circuit Court, Donald R. Zuidmulder, Judge. The two plaintiffs, Wisconsin Public Service Corporation (WPSC) and Associated Electric & Gas Insurance Services Limited (AEGIS), brought suit against the defendant, Arby Construction, Inc. (Arby), for indemnification of the damages that the plaintiffs paid in the settlement of a tort suit in federal court. The circuit court dismissed the AEGIS claim against Arby on the basis of claim preclusion.

¶ 2.   AEGIS contends that the circuit court erred. The issue presented is whether AEGIS raised, in the form of an affirmative defense, a cross-claim against

Arby in the prior federal action and is therefore precluded from pursuing the same claim in this action because the claim was adjudicated in the federal judgment of dismissal.

¶ 3.  We affirm the court of appeals. We conclude that AEGIS's claim was raised, in substance, in the prior federal action and was decided. Therefore, the claim is subject to claim preclusion and was properly dismissed by the circuit court.

## I.  FACTUAL BACKGROUND

¶ 4.  The parties in this suit are three of many named defendants in a personal injury suit that was filed in the United States District Court for the Eastern District of Wisconsin. *Brooks v. Old Republic Ins. Co.,* Case No. 06–C-996 (E.D. Wis.).[1]

¶ 5.  Wisconsin Public Service Corporation is a major public utility headquartered in Green Bay. WPSC provides electricity to a large part of northeast and central Wisconsin, including Door County.

¶ 6.  AEGIS is a mutual insurance company that provides liability insurance to utility and energy-related industries. It is based in East Rutherford, New Jersey. AEGIS provided excess insurance coverage for WPSC. AEGIS also provided excess insurance coverage for two other named defendants in the federal suit, including Arby.[2]

¶ 7.  Arby Construction, Inc. is a construction company based in New Berlin. Arby does excavation

---

[1] The federal case was handled by United States District Court Judge William C. Griesbach.

[2] Like the court of appeals, we do not address the significance of the parties' relationships to each other as the parties here do not argue to this court that the relationship among the parties bears upon the issue of claim preclusion.

work on underground power lines. Arby had a long-standing relationship with WPSC. In 1995, the two corporations executed an agreement that Arby would hold WPSC *and its insurers* harmless for any damages that resulted from contract excavation work performed for WPSC. The indemnification agreement read in part:

> To the fullest extent permitted by law, the Contractor [Arby] shall fully indemnify and completely hold harmless the Company [WPSC], its agents, *insurers* [i.e., AEGIS] and/or employees from and against all actions, claims, demands, damages, losses, costs and expenses . . . which relate to personal or bodily injury . . . where all or any of such actions . . . in any way arise out of or by reason of . . . , in whole or in part, any act or omission of the Contractor.

(Emphasis added.)

¶ 8.    Cedar Grove Resort is a resort located in the village of Ellison Bay in Door County. Sometime prior to July 10, 2006, Ferrellgas, Inc., another named defendant in the federal suit, installed a propane gas pipeline to the Cedar Grove Resort. Ferrellgas was the other named defendant with excess insurance coverage provided by AEGIS.

¶ 9.    Shortly before July 10, 2006, Arby was engaged by WPSC to install underground electrical lines to the Cedar Grove Resort. During the course of its excavation or boring, Arby struck the buried unmarked propane pipeline that had been installed by Ferrellgas, causing a leak.

¶ 10.    On July 10, 2006, the leak caused a massive explosion and fire that killed two people and injured several others, including the three minor children of the deceased. These victims and the estates of the

deceased brought the *Brooks* suit in federal court. The plaintiff victims of the accident were visiting Door County from Michigan.

¶ 11. The *Brooks* suit was eventually settled and dismissed in a stipulated Order of Dismissal. The present case involves some of the jockeying among three of the defendants in attempting to allot damages from the liability settlement.

¶ 12. To understand the dispute about claim preclusion, we must describe the procedure in federal court.

## II. THE FEDERAL SUIT

¶ 13. The *Brooks* complaint was filed in federal district court on September 22, 2006. WPSC and Arby were among the named defendants. AEGIS was not.

¶ 14. The *Brooks* complaint was amended on July 31, 2007. It added AEGIS as a defendant. On the same day, WPSC filed three separate cross-claims, two of which named Arby Construction and its insurers as defendants. One of these cross-claims, directed solely at Arby and its insurers, made specific reference to the Arby-WPSC indemnification agreement from 1995.[3]

---

[3] The cross-claim provided in part: "That by way of a contract or agreement . . . dated July 6, 1995 [and other agreements] . . . Arby Construction, Inc., Old Republic Insurance Co., Inc., Associated Electric and Gas Insurance Services, Ltd. [AEGIS] and RSUI Indemnity Company are obligated to provide insurance coverage to Wisconsin Public Service Corporation as an additional insured or otherwise, with respect to the accident giving rise to this case by way of one or more insurance policies or contracts required to be procured by Arby Construction, Inc. and/or its insurers or re-insurers and that by way of the above-referenced contracts and/or agreements, or other-

¶ 15. The *Brooks* amended complaint required new answers from the defendants.

¶ 16. On August 10, 2007, WPSC and AEGIS filed an answer to the *Brooks* amended complaint. This joint answer included the following statement under an "AFFIRMATIVE DEFENSES" heading:

> 172. That, upon information and belief, based upon the contractual language and other agreements between Wisconsin Public Service Corporation and Arby Construction, Inc., Arby Construction, Inc. and its insurers and reinsurers is required to fully defend, indemnify and hold harmless Wisconsin Public Service Corporation *and its insurers* with respect to the negligence and any other act or violation alleged against Wisconsin Public Service Corporation in this case, and any damages asserted against Wisconsin Public Service Corporation *and its insurers* or reinsurers in this matter.

(Emphasis added.)

---

wise, Arby Construction [and its insurers] are required, to the fullest extent permitted by law, to fully indemnify, completely hold harmless and defend Wisconsin Public Service Corporation, its agents, insurers, reinsurers and/or employees from and against this action and all claims, demands, damages of any sort, losses, costs and expenses, including but not limited to attorney's fees, and any other costs associated with the handling or defense of this action and any claims within it which relate to or arise out of . . . the incident which gives rise to this claim and this lawsuit. Further, this requirement that Arby Construction, Inc., Old Republic Insurance Co., Inc., Associated Electric and Gas Insurance Services, Ltd. [AEGIS] and RSUI Indemnity Company and their additional insurers or reinsurers fully indemnify, hold harmless and defend Wisconsin Public Service Corporation, its insurers and reinsurers, its agents and employees is not limited to the language of this Cross-Claim, but is set forth in full in the above-referenced contract/Agreement and related documents."

¶ 17. On August 14, 2007, Arby filed an answer to the *Brooks* amended complaint. This answer included several affirmative defenses. It also included cross-claims for contribution and indemnity against "every Defendant [including WPSC and AEGIS] (except Arby and its third-party insurers)" and an unrelated third-party defendant. Arby also separately answered WPSC's general and specific cross-claims.[4]

¶ 18. On August 21, 2007, AEGIS separately answered the *Brooks* amended complaint. In this answer, AEGIS included, under a section titled "AFFIRMATIVE DEFENSES," the following statement:

> 48. As and for a third and separate affirmative defense, this answering defendant alleges, upon information and belief, that as an excess indemnity insurer, it is liable only if one or more of its insureds is found to be liable, and, therefore, to that extent, any affirmative defense available to its insureds is available to it and, therefore, *this answering defendant affirmatively incorporates by reference any affirmative defense raised by any of its insureds,* namely, Arby Construction, Inc., Wisconsin Public Service Corporation and/or [Ferrellgas, Inc.] and/or Ferrellgas, L.P.

(Emphasis added.)

¶ 19. On April 1, 2008, the federal litigation settled. Several defendants paid confidential amounts

---

[4] The answer to the WPSC general cross-claim contained a simple denial of the allegation. The answer to the WPSC specific cross-claim provided: "Arby admits the existence of the alleged contractual provision during the time periods alleged, but denies that said agreement is enforceable to the extent alleged by WPS[C] with respect to the claims made by Plaintiffs and, therefore, Arby denies Paragraph 2 of WPS[C's] specific cross claim."

to the *Brooks* plaintiffs. Based on the settlement agreement and a later stipulation by the parties, the district court entered an order of dismissal.

¶ 20. The June 5, 2008, Order for Dismissal reads:

> WHEREAS, upon representation of counsel, all issues in this case are resolved and all claims are settled with the exception of certain contribution and indemnification claims which will be addressed outside the confines of this lawsuit;
>
> NOW, THEREFORE, IT IS HEREBY ORDERED:
>
> 1. The cross-claims for contribution asserted by Arby Construction and Ferrellgas against each other, and the contractual indemnification claim asserted by Wisconsin Public Service Corporation against Arby Construction and its insurers, are dismissed without prejudice and without costs.
>
> 2. This lawsuit, together with any and all claims set forth in the pleadings other than those [referred to] in paragraph one, above, is dismissed on the merits, with prejudice, but without costs.

## III. PROCEDURAL HISTORY OF THIS CASE

¶ 21. On June 29, 2009, WPSC and AEGIS filed a complaint in Brown County Circuit Court against Arby seeking indemnification for amounts paid in the underlying settlement as well as more than $400,000 in attorney fees spent defending the action.

¶ 22. Arby answered the complaint and alleged myriad affirmative defenses including claim preclusion. Arby also filed a motion to dismiss AEGIS from the action "for failure to state a claim and based on res judicata (i.e. claim preclusion)."

¶ 23. AEGIS opposed Arby's motion to dismiss, arguing that AEGIS was not adverse to Arby in the prior federal suit, that no identity of claims existed, and that the common law compulsory counterclaim rule was inapplicable to this case.

¶ 24. Arby replied that because AEGIS did "not dispute that, in the prior litigation, [AEGIS] raised an affirmative defense seeking indemnification from Arby," claim preclusion applied.

¶ 25. After a hearing on the motion, the circuit court granted Arby's motion to dismiss AEGIS from the suit. As part of its reasoning, the circuit court concluded that the federal dismissal order "covers AEGIS, covers this claim, and there was no carve out . . . . [T]hese things happen." In essence, the circuit court ruled that AEGIS did not carve out any exception to the order of dismissal.

¶ 26. The court of appeals, in a published opinion, affirmed the circuit court. The court of appeals held that AEGIS's affirmative defense, asserting Arby's duty to indemnify AEGIS and WPSC, "was the functional equivalent of a cross-claim for purposes of claim preclusion." *Wis. Pub. Serv. Corp.*, 333 Wis. 2d 184, ¶ 2. The court of appeals added that, "The only reasonable inference is that AEGIS's claim for contract indemnification against Arby was dismissed with prejudice unless it was specifically excepted from dismissal with prejudice. AEGIS does not contend that its indemnification claim was specifically excepted." *Id.*, ¶¶ 29–30.

¶ 27. After a brief discussion of common law compulsory counterclaims, *id.*, ¶¶ 16–19, the court of appeals determined that AEGIS had, in substance if not in form, raised a cross-claim by asserting it as an affirma-

554

tive defense. *Id.,* ¶¶ 20–28. As a result, the court determined that all elements of claim preclusion were present. *Id.,* ¶ 31.

## IV. STANDARD OF REVIEW

¶ 28.  We review the grant of a motion to dismiss based upon claim preclusion in the same manner we review a grant of summary judgment. Wis. Stat. § 802.06(2)(a)8. and (b) and Wis. Stat. § 802.08.

¶ 29.  Thus, we review the decision de novo applying Wis. Stat. § 802.08(2) in the same manner as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987); *Wickenhauser v. Lehtinen,* 2007 WI 82, ¶ 15, 302 Wis. 2d 41, 734 N.W.2d 855.

¶ 30.  "The question of whether claim preclusion applies under a given factual scenario is a question of law that this court reviews de novo." *N. States Power Co. v. Bugher,* 189 Wis. 2d 541, 551, 525 N.W.2d 723 (1995). In determining the claim-preclusive effect of the judgment of a federal district court located in Wisconsin and sitting in diversity jurisdiction, we apply Wisconsin law of claim preclusion. *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508 (2001).

## V. DISCUSSION

¶ 31.  Claim preclusion or res judicata has its roots in Roman law. Robert von Moschzisker, *Res Judicata,* 38 Yale L.J. 299 (1929). Res judicata is a rule of "public policy, and, secondarily, of private benefit to individual litigants." *Id.* at 299. "[T]he protection from the annoy-

ance of repeated litigation, which the individual suitor is afforded, is, after all, only an incident of the first principle, that the best interests of society demand that litigation be concluded." *Id.*

¶ 32.   Chief Justice Luther Dixon, writing for this court, reflected these principles in the early case of *Pierce v. Kneeland,* 9 Wis. 19 (*23) (1859). *Pierce* involved the claim-preclusive effect of a confirmation of sale in the context of the foreclosure of a mortgage. Chief Justice Dixon wrote:

> We presume that no one will be found to dispute the proposition, that when a question of law or fact has once been determined by a court of competent jurisdiction, it cannot, except in some of the modes of review provided by law, be again contested between the same parties, whether in the same or any other court. This rule has found a place in every well regulated system of laws for the government of mankind. The necessity for it exists in the very nature of things; without it no laws could be enforced, litigation would be fruitless as well as endless, and rights, whether public or private, could never be protected, and wrongs never redressed.
>
> It follows, as a consequence of this rule, that a party, when called upon in legal form to establish a cause of action or defense, must do so by proving all the facts within his power and that if he purposely or negligently fail in doing this, he will not afterwards be permitted to deny the correctness of the determination, or renew the controversy.

*Id.* at 25 (*30–31).

¶ 33.   Wisconsin law of claim preclusion exists to prevent endless litigation. Under claim preclusion, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were

litigated or which might have been litigated in the former proceeding." *Lindas v. Cady,* 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994) (quoting *DePratt v. West Bend Mut. Ins. Co.,* 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983))(internal quotation marks omitted).

¶ 34.  As *Lindas* noted, "[c]laim preclusion . . . extends to any and all claims that . . . *could have been* asserted in the previous litigation." *Id.* at 559. To illustrate the point, in *Wickenhauser v. Lehtinen,* 302 Wis. 2d 41, ¶ 26, the court recognized the common-law compulsory counterclaim rule as "a narrow exception to the general rule of permissive counterclaims." *See* Wis. Stat. § 802.07. In cases where the common-law compulsory counterclaim rule is applicable, counterclaims that *could* have been pleaded but were not pleaded are subject to claim preclusion. This case does not require us to deal with the common-law compulsory counterclaim rule or the hypothetical possibility of a compulsory cross-claim rule. Rather, the issue is whether the actual statement of a claim as an affirmative defense is substantively the same as its statement in a cross-claim. If the statement is substantively the same, as we conclude it is, then a claim has actually been raised, and we do not need to decide whether AEGIS was required to raise the claim.

¶ 35.  The elements of claim preclusion are traditionally stated as "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." *N. States Power Co.,* 189 Wis. 2d at 551; *see also Kruckenberg v. Harvey,* 2005 WI 43, ¶ 21, 279 Wis. 2d 520, 694 N.W.2d 879; *Sopha v.*

*Owens-Corning Fiberglas Corp.,* 230 Wis. 2d 212, 233–34, 601 N.W.2d 627 (1999).

¶ 36. Here the parties dispute whether the elements of claim preclusion are present. We determine that they are.

■ ■

¶ 37. In reaching this determination, we note that "the entire tenor of modern law is to prevent the avoidance of adjudication on the merits by resort to dependency on non-prejudicial and non-jurisdictional technicalities." *Cruz v. Dep't of Indus., Labor & Human Relations,* 81 Wis. 2d 442, 449, 260 N.W.2d 692 (1978). Courts now look beyond "hypertechnical" defects in the pleadings such as *mislabeling* or *miscaptioning* parts of a pleading. *Id.* at 446, 449. They look beyond the *form* of a pleading to the *substance* of the pleading in order to decide a matter on the merits. *bin-Rilla v. Israel,* 113 Wis. 2d 514, 521, 335 N.W.2d 384 (1983).

¶ 38. Once cases have been decided *on the merits,* it is in the interest of society (as well as the parties) for litigation to cease. Claim preclusion must mirror the modern approach to pleadings if adjudication on the merits is to have real meaning. Giving claim-preclusive effect only to claims that are perfectly pleaded would seriously undermine the tenor of the modern law.

■

¶ 39. Because, like the court of appeals, we determine that the substance of the "affirmative defense" in AEGIS's answers was a cross-claim against Arby, we determine that the dismissal with prejudice and on the merits in the stipulated Order of Dismissal has claim preclusive effect. WPSC's claim against Arby, which was explicitly preserved in the federal order of dismissal, may go forward. AEGIS's claim, which was not preserved, may not.

¶ 40. We now turn to the elements of claim preclusion. AEGIS's argument against applying claim preclusion relates to both the identity of parties and the identity of claims elements of claim preclusion.

¶ 41. We view AEGIS to be arguing that because AEGIS did not label its claim against Arby as a cross-claim and instead labeled it an affirmative defense, it did not assert that claim and therefore did not create adversity between itself and Arby—thus defeating the identity of parties and identity of claims elements of claim preclusion. Adversity is not itself an element; it is a prerequisite for determining an identity of the parties.

¶ 42. However, the *substance* of AEGIS's assertion in its answers was a cross-claim against Arby. AEGIS was seeking indemnification from Arby in both its joint answer with WPSC as well as its own answer to the amended *Brooks* complaint. AEGIS's assertion mirrored the language of WPSC's prior cross-claim against Arby as well as the cross-claim by Arby against WPSC and AEGIS that Arby included in its Answer to the Amended Complaint.

¶ 43. The fact that AEGIS did not assert its claim in perfect form does not change our analysis. A party is not entitled to rekindle litigation when it has imperfectly asserted a claim against a party in a previous action. Such a decision would undercut finality and proper adjudication in the earlier suit. As we will address more fully later, AEGIS's prior assertion regarding indemnification is the same claim that it is seeking here.

¶ 44. This court's previous cases regarding adversity support our conclusion in this case that the identity of the parties element is met. The early cases regarding adversity involved the equitable doctrine of contribu-

559

tion. *Wait v. Pierce,* 191 Wis. 202, 225–26, 210 N.W. 822 (1926) (on rehearing); Chas. B. Quarles, *Contribution Between Joint Tort-Feasors,* 1 Marq. L. Rev. 141 (1917). Although the discussion of pleadings in those cases is not directly on point, the discussion of adversity is illuminating and helpful.

¶ 45. *Bakula v. Schwab,* 167 Wis. 546, 168 N.W. 378 (1918), involved a suit by a woman who was injured while she was a passenger in a hired vehicle driven by Schwab. Schwab swerved to avoid hitting a horse and buggy that began to turn left as Schwab started to pass. Bakula was injured when the Schwab vehicle drove into a ditch. As the case went to trial, Schwab brought in the driver of the horse and buggy as a party defendant. *Id.* at 547–48 (statement of the case). "No cross-complaint was made or filed by either defendant, and there was no issue between them." *Id.* at 548. The defendants simply defended against the plaintiff regarding their liability to the plaintiff. *Id.* The court granted a directed verdict in favor of the driver of the horse and buggy before the case went to the jury. *Id.* Thereafter, Schwab was found to be negligent. *Id.*

¶ 46. Schwab raised several issues on appeal including a challenge to the directed verdict that had been granted to his co-defendant.

¶ 47. This court, in discussing whether one defendant could appeal a judgment in favor of the other defendant, addressed the question of the claim-preclusive effect of the verdict in favor of the one defendant as it relates to his liability to the other defendant. *Id.* at 552–53 (opinion of the court).[5]

---

[5] Before the court considered this question, it first had to determine whether the co-defendant was a proper party to the appeal. The court considered "substance rather than form" to

¶ 48.  The court said:  "It is generally held that a judgment in favor of the plaintiff against one or more codefendants is *res adjudicata* in subsequent actions between such codefendants so far as the question of indebtedness of the defendants to the plaintiff is concerned, but no farther." *Id.* at 553. The court held that the defendant automobile-driver had no right to appeal the dismissal of his co-defendant because he could still bring a claim for contribution against the co-defendant. *Id.* at 553–58.

¶ 49.  The court explained that the parties, who had not filed cross-claims against each other, were not adverse. The court summarized adversity as follows:

> It is fundamental and universal that the former judgment proffered as *res adjudicata* in a subsequent suit must have been rendered in an action in which the parties to the subsequent suit were adverse parties. What is meant by adverse parties scarcely needs definition. Its significance is apparent from the expression itself. They must be opposite parties to an issue between them. *The issue must be proffered by one and controverted by the other. They must be arrayed on opposite sides of the issue.*

*Id.* at 555–56 (emphasis added).

¶ 50.  *Bakula* demonstrates that when joint-tortfeasors are tried together but do not assert or contest cross-claims, they are not necessarily precluded from making contribution claims against each other later. *Bakula* also supports the principle of looking at

determine the effect of the judgment and the parties' rights to appeal. *Bakula v. Schwab,* 167 Wis. 546, 552, 168 N.W. 378 (1918). The court construed the judgment so that the rights of both of the co-defendants had been determined with respect to the plaintiff. *See id.*

the substance of an underlying judgment and pleadings rather than their form to determine the claim-preclusive effect of the judgment.

¶ 51. *Bakula* was modified by this court in 1926. The basis for this modification in *Wait v. Pierce,* 191 Wis. 202 (on rehearing), was that the parties wanted to dispose of the entire case including claims among defendants. The court discussed the role of procedural statutes, in determining liability of defendants both to the plaintiff and with respect to one another, in the context of interpleader and *filed cross-claims.* The court also discussed theories underlying equitable contribution. *Id.* at 225. The court looked at the spirit and letter of the procedural statute to determine that the cross-claim could be disposed of within the underlying action. *Id.* at 230.

¶ 52. In 1973, this court, in *Gies v. Nissen Corp.,* 57 Wis. 2d 371, 204 N.W.2d 519 (1973), recounted *Bakula* and *Wait.* The court noted that in *Wait,* co-defendants litigated cross-claims in order that "the entire controversy may be settled in one action." *Id.* at 382 (quoting *Wait,* 191 Wis. at 231–32)(internal quotation marks omitted). The *Gies* court then turned to the case before it, a case by an injured plaintiff against her college, a trampoline manufacturer, and others.

¶ 53. In that case, one of the defendants, Burghardt, was impleaded as a party defendant by the other defendants. *Id.* at 375. Two co-defendants "then filed a cross complaint seeking contribution from Burghardt, resting their claim, in part, upon the joint liability" of Burghardt and the other defendants to the plaintiffs.[6] *Id.* at 382. Burghardt did not answer the

---

[6] Notably, the cross complaint against Burghardt by the other defendants was mislabeled as a "third-party complaint."

cross complaint. *Id.* at 383. Rather, Burghardt moved for summary judgment *from the amended complaint of the plaintiffs,* which was granted when plaintiffs and co-defendants did not oppose that motion. *Id.* at 376. Burghardt then moved for summary judgment *from the cross-complaint,* which also was granted. *Id.* In affirming the circuit court, this court reviewed whether the initial grant of summary judgment was res judicata with regard to the cross-complaint by the co-defendants. The court determined that it was. *Id.* at 382–83. Even though Burghardt filed no response to the cross complaint, as none was then required by the statute, the issue was proffered by one side and controverted by the other and they were sufficiently adverse parties. *Id.* at 383 & n.4.[7] Therefore, when judgment was granted with regard to Burghardt's liability, the cross complaint was necessarily decided as well.

¶ 54. *U.S. Fidelity & Guaranty Co. v. Goldblatt Bros., Inc.,* 142 Wis. 2d 187, 417 N.W.2d 417 (Ct. App. 1987), supports this analysis. The *U.S. Fidelity* case was decided in the context of estoppel by record, which this court has determined is "identical to claim preclusion except that it is the record of the earlier proceeding,

*Gies v. Nissen Corp.,* 57 Wis. 2d 371, 375 & n.1, 204 N.W.2d 519 (1973). When the trial court later addressed and dismissed that complaint (which dismissal this court upheld on claim preclusion grounds), the trial court treated it as a cross-complaint even though it was not labeled as such.

[7] The rules governing procedure for cross-claims have changed since *Gies.* The significance of *Gies* is its discussion of adversity. This is especially relevant in the context of AEGIS's assertion that Arby did not answer its affirmative defense. The lack of an answer to a claim does not prevent adversity and thus claim preclusion. If that were the case, default judgments due to lack of an answer would become meaningless and no cross-claim nor complaint would ever be answered.

rather than the judgment itself, which bars the subsequent proceeding." *Lindas v. Cady,* 183 Wis. 2d at 558.

¶ 55. In *U.S. Fidelity,* the court of appeals rejected an argument by one defendant regarding adversity by saying: "Goldblatt argues that parties need not be literal adversaries, nor even functional adversaries, to constitute an identity of parties. We cannot agree. . . . [T]he concept of identity of parties requires that the parties be formally adverse." *U.S. Fid.,* 142 Wis. 2d at 191.

¶ 56. While the court of appeals used the term "formally adverse," it did not change the law regarding adversity and identity of parties. In *U.S. Fidelity,* Goldblatt and U.S. Fidelity were co-plaintiffs in a prior action operating under a joint prosecution agreement. *Id.* at 189. U.S. Fidelity "brought no cross-claim against Goldblatt." *Id.* U.S. Fidelity later sued Goldblatt; Goldblatt obtained summary judgment based on estoppel by record. The court of appeals reversed, determining that the co-plaintiffs in the prior action were not adverse when *no claim had been filed between them. Id.* at 189, 192. This context is critical. *U.S. Fidelity* requires no more for adversity than *Bakula* and *Gies.*

¶ 57. The identity of parties element is satisfied in this case. The three parties in this case were all parties in the federal case. In the federal case, AEGIS was pitted against Arby in the pleadings with respect to the specific indemnification claim that is at issue here. The pleadings were not required to be in perfect form to create and reveal adversity. This is not a situation, like *U.S. Fidelity,* in which the claim in dispute never surfaced in pleadings from and between the relevant parties so that it was not evident where the parties stood.

¶ 58. Moving to the identity of claims, the claim was and is financial liability arising out of a contract for indemnification. The parties allege that the contract between WPSC and Arby requires Arby to reimburse WPSC and its insurers for any amounts they have paid, regardless of the negligence of the two parties.

¶ 59. What is important in fulfilling the identity of claims element of claim preclusion is that the precise claim for indemnification existed and was known in the prior litigation. Even though AEGIS contends that it was not trying to assert this claim, the claim appears repeatedly in the pleadings, including *its* pleadings. Moreover, as the court of appeals recognized, indemnification is not an affirmative defense. Contractual indemnification does not affect AEGIS's liability with respect to the plaintiffs.

¶ 60. The parties direct us to *Mountan v. Chautauqua Airlines, Inc.,* Unpublished Decision and Order, No. 06C1026 (E.D. Wis. Mar. 11, 2009). This case is entirely consistent with our decision today. A federal court in Wisconsin recognized that indemnification is a claim, not a defense. In *Mountan,* United States District Court Judge Lynn Adelman stated:

> As a preliminary matter, I note that neither Delta nor Comair has filed any pleading containing a separate section asserting a cross-claim against Chautauqua for defense and indemnification. However, in Delta and Comair's answer to the amended complaint, they assert contribution and indemnification as an affirmative defense, and, in the conclusion, request a judgment against Chautauqua for contribution and indemnification. (Delta and Comair's Ans. to Am. Compl. at 7.) Chautauqua has not objected to the motion for declaratory judgment on the ground that it did not receive

adequate notice of the claims against it, and the grounds upon which those claims rest. Thus, I conclude that the request for a judgment in contribution and indemnity set forth in the answer is sufficient to assert a cross-claim against Chautauqua under notice pleading standards, and I will proceed to the merits of the motion without further addressing this issue.

*Mountan,* Unpublished Decision and Order, No. 06C1026 (E.D. Wis. Mar. 11, 2009).

¶ 61. Additionally, the fact that the claim was never clarified or relabeled as a claim is relevant only because AEGIS chose to participate in the settlement and the case did not go to trial. We do not believe that AEGIS would be making the argument, had the case gone to trial, that it was not actually seeking indemnification from Arby. It was.

¶ 62. Both the Wisconsin rules of civil procedure and the federal rules support our treating the affirmative defense claim as a cross-claim because we ought to look at the substance rather than the form of pleadings. Fed. R. Civ. P. 8(c)(2); Wis. Stat. § 802.02(3).

¶ 63. Here, the identity of parties and identity of claims elements are met.

¶ 64. The final element of claim preclusion is a judgment on the merits. This element also has been met. A stipulated judgment (as a result of a settlement) on the merits may have the same preclusive effect as a claim litigated to conclusion. *Great Lakes Trucking Co. v. Black,* 165 Wis. 2d 162, 168–69, 477 N.W.2d 65 (Ct. App. 1991).

¶ 65. Here, the federal court in the prior action issued a judgment on the merits. While the phrase "on the merits" is not enough for a judgment to be on the

566

merits for purposes of claim preclusion, *Semtek*, 531 U.S. at 501–02; *Hernke v. Coronet Ins. Co.*, 72 Wis. 2d 170, 177, 240 N.W.2d 382 (1976), the judgment in this case explicitly referred to the representations of counsel that *all* claims (except specific contribution and indemnification claims) were to be dismissed with prejudice. Thus, this judgment disposed of the action on the merits and has claim-preclusive effect. Because we determine that AEGIS did, in substance, raise the cross-claim, its claim has been adjudicated. The substance of this claim was raised and was decided as demonstrated by the court explicitly reserving other cross-claims that had been raised.

¶ 66. Certainly this case demonstrates a certain tension between the principle of substance over form in permitting litigation to continue and the finality that results from applying substance over form in the cross-claim context. We are not unmindful that our decision bars AEGIS, unlike WPSC, from litigating the claim on the merits at trial. However, we perceive that a contrary decision would undermine the principles of claim preclusion because AEGIS raised the substance of the claim in the prior action, and the court dismissed the claim on the merits, and this suit is simply an attempt to *re*-litigate the merits of the claim.

¶ 67. Because the modern approach to the law focuses on substance over form in pleadings, the principle carries forward to claim preclusion. Claim preclusion is the doctrine that gives pleading and litigation meaning. Without claim preclusion, litigation "would be fruitless as well as endless." *Pierce,* 9 Wis. at 25 (*31). If we were to give claim preclusive effect only to claims that were formally-perfect in prior litigation, we would be re-injecting a focus on formalism into modern civil

procedure that has been soundly rejected and that is at odds with the entire tenor of the modern law.

¶ 68.   It was within AEGIS's control to be clearer in its pleadings. If a party is negligent in labeling its claims or in preserving its interests, that is the problem of that party alone.

¶ 69.   Before we conclude, we briefly address AEGIS's contention that this decision "is incompatible with federal interests" under *Semtek*, 531 U.S. at 509. AEGIS has provided no support for this proposition. As we have discussed, federal procedural rules are consistent with this result. Our decision in this case is the same as it would be if the *Brooks* action had been filed in Wisconsin circuit court. The *Semtek* decision was aimed at ensuring uniformity in the claim-preclusive effects of judgments whether claims are filed in state or federal court.

¶ 70.   Our decision today is wholly consistent with our past precedents, the principles of claim preclusion, and the entire tenor of the modern law.

## VI.   CONCLUSION

¶ 71.   We affirm the court of appeals. We conclude that AEGIS's claim was raised, in substance, in the prior action and was decided. Therefore, the AEGIS claim is subject to claim preclusion and was properly dismissed by the circuit court.

¶ 72.   *By the Court.*—The decision of the court of appeals is affirmed.

¶ 73. SHIRLEY S. ABRAHAMSON, C.J. (*concurring in part and dissenting in part*). This case involves the interpretation and application of a federal district court's Order dismissing a prior federal action. An appellate court typically interprets a judgment in the

same manner that it interprets other written documents, including contracts.[1] The majority appears to have taken a different approach in the present case.[2] Like the circuit court, I would structure the opinion around the federal court's Order rather than immediately and exclusively jumping into analyzing the elements of claim preclusion.

¶ 74.   The federal court's Order for Dismissal provides:

> WHEREAS, upon representation of counsel, all issues in this case are resolved and all claims are settled with the exception of certain contribution and indemnification claims which will be addressed outside the confines of this lawsuit;

---

[1] *See, e.g., First Wis. Trust Co. v. Pereles,* 259 Wis. 263, 271, 48 N.W.2d 601 (1951) (overruled on other grounds by *MacLean v. First Nat'l Bank of Madison,* 47 Wis. 2d 396, 404, 177 N.W.2d 874 (1970)) ("If the ambiguities appear in the final judgment they must, of course, be clarified and the judgment construed or interpreted so that parties asserting conflicting rights under it may be informed and those charged with a duty to act may be instructed."); *Waters v. Waters,* 2007 WI App 40, ¶ 6, 300 Wis. 2d 224, 730 N.W.2d 655 ("In reviewing legal issues, such as construction of a divorce judgment, appellate courts apply a de novo standard of review. We will do likewise. We construe divorce judgments at the time of their entry and in the same manner as other written instruments. We apply the rules of contract construction to a divorce judgment. This is true even when the divorce judgment is based on the parties' stipulation." (citations omitted)); *Spencer v. Spencer,* 140 Wis. 2d 447, 450, 410 N.W.2d 629 (Ct. App. 1987) ("We apply the rules of contract construction to a judgment.").

[2] The court of appeals' and the majority's focus on claim preclusion is understandable because the parties focused on the elements of claim preclusion in their briefs. Had the majority approached the case as I suggest, it might have been advisable to request supplemental briefing.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. The cross-claims for contribution asserted by Arby Construction and Ferrellgas against each other, and the contractual indemnification claim asserted by Wisconsin Public Service Corporation against Arby Construction and its insurers, are dismissed without prejudice and without costs.

2. This lawsuit, together with any and all claims set forth in the pleadings other than those referenced in paragraph one, above, is dismissed on the merits, with prejudice, but without costs.

¶ 75. As I see it, there are three possible interpretations of the federal court's Order for Dismissal and three ways to apply the Order to the present case.

¶ 76. One interpretation is that AEGIS's indemnification claim falls within paragraph 1 of the federal Order and was dismissed without prejudice. Under this interpretation of the Order, AEGIS clearly may proceed in the present case. Neither party argues that AEGIS's claim was explicitly preserved by paragraph 1 of the Order for Dismissal.[3] No court has adopted this interpretation of the Order.

¶ 77. A second interpretation is that AEGIS's indemnification claim falls within paragraph 2 of the federal Order and was dismissed with prejudice. Under this interpretation of the Order, AEGIS loses and Arby

___

[3] Like the parties and like the majority, I do not address the impact of the fact that AEGIS insured both Arby and WPSC. Nor do I address the possibility that AEGIS's claim was preserved with WPSC's claim against Arby in paragraph 1 of the Order for Dismissal. *See* majority op., ¶ 20; *Wis. Pub. Serv. Corp. v. Arby Constr., Inc.*, 2011 WI App 65, ¶ 12 n.2, 333 Wis. 2d 184, 798 N.W.2d 715.

is entitled to judgment on the basis of the Order, without further analysis regarding claim preclusion.

¶ 78.  The circuit court took this approach. It determined as a matter of law that AEGIS's claim was dismissed with prejudice by the federal court's Order for Dismissal. For the circuit court, that was the end of the discussion. The circuit court did not analyze the elements of claim preclusion when it granted Arby's motion to dismiss.[4]

¶ 79.  Arby seems to focus most of its attention on arguing that it is entitled to judgment on the basis of claim preclusion as opposed to arguing that it is entitled to judgment solely on the basis of the text of the Order for Dismissal.

¶ 80.  The court of appeals and the majority opinion can be read to hold that AEGIS's pleading of its affirmative defense in the federal lawsuit is, as a matter of Wisconsin law, the functional equivalent of a cross-claim for indemnification and that as a "claim" it fits within paragraph 2 of the federal Order.[5]

---

[4] Although the parties made reference to claim preclusion in the circuit court, detailed analysis of the elements of claim preclusion comes into the parties' argument at the court of appeals.

[5] I agree with the majority that under *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497 (2001), it is appropriate to apply Wisconsin claim preclusion law to determine the preclusive effect of a judgment of a federal court that was sitting in diversity jurisdiction. *See* majority op., ¶¶ 30, 69. That being said, if the court is interpreting the text of the federal court's Order, it might be appropriate to consider federal law regarding the meaning of the word "claim" and the federal interpretation of imperfect pleadings, because it seems that the Order might have been crafted on the basis of federal pleading law.

571

¶ 81. Under both courts' interpretation of Wisconsin pleading, it seems to me that neither the court of appeals nor the majority need reach the issue of claim preclusion; Arby is entitled to judgment on the basis of the Order. Nevertheless, the court of appeals and the majority analyzed each element of claim preclusion.

¶ 82. A third interpretation of the Order is that the Order is ambiguous with regard to whether AEGIS's indemnification claim is addressed in paragraph 1 or paragraph 2 or is not addressed in the Order at all. If a court concludes that the Order is ambiguous, the court might look to extrinsic materials clarifying the parties' intent[6] or might apply a claim preclusion analysis to determine whether AEGIS's indemnification claim may proceed.

¶ 83. An analysis of the parties' intent appears in the opinion of the court of appeals. The court of appeals stated that "[t]he only reasonable inference is that, had

---

[6] *See, e.g., Town Bank v. City Real Estate Dev., LLC,* 2010 WI 134, ¶ 33, 330 Wis. 2d 340, 793 N.W.2d 476 ("Only when the contract is ambiguous, meaning it is susceptible to more than one reasonable interpretation, may the court look beyond the face of the contract and consider extrinsic evidence to resolve the parties' intent."); *Miller v. Miller,* 67 Wis. 2d 435, 441, 227 N.W.2d 626 (1975) ("In this case, both the stipulation and the judgment incorporating it specify only that support payments shall be made 'until the further order of the court.' . . . No ambiguity appears on the face of the stipulation, therefore resort to the subjective intents of the parties at the time of the stipulation is unnecessary."); *Pereles,* 259 Wis. at 271 (overruled on other grounds by *MacLean v. First Nat'l Bank of Madison,* 47 Wis. 2d 396, 404, 177 N.W.2d 874 (1970)) ("If the ambiguities appear in the final judgment they must, of course, be clarified and the judgment construed or interpreted so that parties asserting conflicting rights under it may be informed and those charged with a duty to act may be instructed.").

the parties intended that AEGIS be able to assert in a separate action a claim for indemnification from Arby for that payment, they would have included AEGIS in this [first] exception."[7] The inference drawn by the court of appeals is not, in my opinion, the only reasonable inference to be drawn from the Order. There are other reasonable inferences and interpretations of the Order.

¶ 84. This case is before the court on either a motion to dismiss (according to the circuit court) or a motion for summary judgment (according to the court of appeals). The record is the federal pleadings. The federal Order for Dismissal was based on "representation[s] of counsel" and on the settlement in the prior federal action; no representations or settlement documents are part of the record before us. Can a court determine, as a matter of law on the limited record of the federal pleadings, that the only reasonable inference is that the parties did not intend AEGIS to be able to pursue its claim against Arby at a later date?

¶ 85. Perhaps the parties agreed to resolve AEGIS's indemnification claim at a later date. Perhaps counsel represented that AEGIS's indemnification claim did not need to be carved out of the Order for Dismissal (as WPSC's claim was) because the affirmative defense was not labeled as a "claim" in the federal pleadings and was not properly pleaded as a cross-claim under the federal rules.[8]

¶ 86. The majority does not explicitly make the interpretive inference that the court of appeals made.

---

[7] *Arby Constr.,* 333 Wis. 2d 184, ¶ 30.

[8] An additional possibility is that the parties do not want to resort to extrinsic materials relating to the settlement, which has been kept confidential.

Rather, the majority concludes, as a matter of law, that any mislabeled pleading, the substance of which would be properly considered a cross-claim, will serve to bar the party from later litigating that claim, regardless of the parties' intent and understandings in the prior litigation, if the requirements of claim preclusion are met.[9]

¶ 87.    The majority asserts that "[a] party is not entitled to rekindle litigation when it has imperfectly asserted a claim against a party in a previous action." Majority op., ¶ 43. Similarly, the majority concludes that "this suit is simply an attempt to *re*-litigate the merits of the claim." Majority op., ¶ 66.

¶ 88.    I agree with the majority's assertion that a party should not be allowed to *re*-litigate or rekindle a claim by hiding behind the guise that the claim was improperly pleaded in the prior action. I agree with the majority that a mislabeled cross-claim *may* be given preclusive effect in a subsequent action.[10] But at this stage in the present case, I am unable to determine

---

[9] The majority states that identity of claims is satisfied because the claim "existed and was known" in the prior litigation. Majority op., ¶ 59. A cross-claim for contractual indemnification can "exist and be known" without becoming compulsory. The majority's language is too broad.

[10] In a much different context, treating AEGIS's affirmative defense as a cross-claim would be a classic application of "substance over form." If AEGIS were at risk of losing its claim based on the technical pleading error, and it would not be prejudicial to Arby to treat the affirmative defense as a cross-claim, the "tenor of modern law" would certainly support raising substance over form. *Cf.* majority op., ¶ 37.

The principle of substance over form is usually invoked (1) to allow litigants their day in court; (2) to resolve issues on the merits; and (3) after careful consideration of potential prejudice that will result from overlooking a technical defect in a plead-

from the record before the court whether AEGIS is, in fact, attempting to *re*-litigate or rekindle its claim, or if the parties instead left the claim to be resolved in a subsequent action.[11]

¶ 89.    For the reasons stated above, I respectfully write separately.

¶ 90.    I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence/dissent.

ing. *See, e.g., Cruz v. DILHR,* 81 Wis. 2d 442, 449, 260 N.W.2d 692 (1978). The majority acknowledges, but does not explore, the fact that there is some "tension" between its strict application of substance over form to preclude a party from bringing a claim and the typical reliance on substance over form as a method of preserving a party's opportunity to litigate. Majority op., ¶ 66.

[11] The case would be different if the claim in question were an ordinary claim as opposed to a cross-claim. In that scenario, it would not matter whether the claim was actually brought or whether the parties actually addressed the claim. Under the transactional approach to claim preclusion, an ordinary claim arising from the same transaction may be precluded even if it was mislabeled or not brought at all, in any form.

Much of the majority's discussion regarding the potential consequences of an alternative holding does not make clear that the present case affects only cross-claims and other claims that are permissive, as opposed to compulsory. *See, e.g.,* majority op., ¶ 38, 67.