KESSLER, P.J.
¶ 1 Katherine L. Hobbins appeals from an order of the circuit court denying her motion for child support. We affirm.
BACKGROUND
¶ 2 John Brodersen and Katherine Hobbins were married in 1997 and divorced in 2002. At the time of their divorce, the parties had a two-year old daughter, Isabella.[1] On February 11, 2002, the parties finalized a negotiated agreement which was incorporated into a marital settlement agreement (MSA). The MSA contained specific provisions about child support and Section 71 payments from Brodersen to Hobbins.[2] As to child support, the MSA provided:
In light of the financial provisions made for both parties in this agreement, the parties request that the court hold child support open.
They further agree that if for any reason any court orders child support, that the recipient shall immediately return the entire amount of child support to the payer, and shall not keep any portion. The intent of this agreement is that the Section 71 Payments referred to in Section IV, below, shall encompass all payments between the parties, except the $200,000 set forth in Section VII.C., below, and that no other payment shall be made between the parties.
¶ 3 The parties waived maintenance, but the MSA contained a detailed provision governing Section 71 payments to be made by Brodersen to Hobbins. The payments were divided into three tiers, ultimately totaling more than $3 million over the course of 192 months. The MSA explained the purpose of the Section 71 payments:
The determination of three years of payments for "Tier 1", above, and 192 months of payments for "Tier 2" and "Tier 3", above, has been made based upon the expectation of the needs of [Hobbins], and was not calculated based upon anything relating to the child. At the present time, the emancipation of Isabella will occur on her 18th birthday. It is expected that this will also occur more than six months beyond her graduation from high school..... [T]he selection of a termination date for the Tiers of the Section 71 payments is not intended to coincide with a contingency relating to Isabella. If a termination does occur within six months of her high school graduation, that would be by coincidence.
.....
... [T]he parties are estopped from requesting that said payments be modified either in amount of each payment or in the number of payments[.]
¶ 4 The MSA also addressed property division, identifying real and personal property to be awarded to the parties, as well as a requirement that Brodersen pay Hobbins $200,000 by July 31, 2002.
Placement Disputes and Hobbins's 2014 Child Support Motion
¶ 5 The MSA incorporated a custody and placement agreement between the parties, in which Brodersen and Hobbins stipulated to joint legal custody and shared placement depending on Isabella's age and developmental level. In 2007, Brodersen filed a motion to enforce his placement rights, kicking off a long and contentious litigation between the parties. In the years that followed, Brodersen filed multiple motions to enforce his placement rights.
¶ 6 On February 21, 2014, Hobbins filed a motion seeking to dismiss one of Brodersen's motions to enforce placement, but also seeking child support. Hobbins argued that the MSA functionally barred her from seeking child support because the payback requirement rendered any support received meaningless. Hobbins argued that the provision was not in Isabella's best interest and violated public policy. A supplemental affidavit alleged that a substantial change in circumstances warranted child support.
¶ 7 The child support issue was tried to the family court on March 26, and May 1, 2015.[3] At the trial, Hobbins testified about Isabella's increased expenses, including food, shopping, and travel expenses, stating that the increased expenses constituted a substantial change in circumstances. Hobbins stated that Isabella was aware of Brodersen's standard of living and Isabella should have the same standard. Hobbins stated that she was seeking $21,000 in monthly child support to cover Isabella's food, clothing, school costs, grooming expenses, electronics, and travel expenses.
¶ 8 During cross-examination, Brodersen's counsel introduced the trial transcript from the parties' 2002 divorce. Brodersen's counsel read the portions of the transcript concerning child support to the family court, in which the parties agreed to the child support repayment provision of the MSA and agreed that the MSA covered the needs of both Hobbins and Isabella.
¶ 9 After the transcript was read, and following a short recess, Hobbins's attorney moved to dismiss the child support motion with prejudice. The following exchange ensued:
THE COURT: Now, you have the option of continuing to proceed with your motion or you can withdraw it at this time. My understanding is if the motion is withdrawn and dismissed with prejudice, meaning not pursued prospectively, the other side is not going to make any claims for legal fees or other things related to this financial issue.
Is that correct, [Brodersen's counsel]?
[Brodersen's counsel]: Correct.
THE COURT: So, ma'am, given the opportunity to proceed or to dismiss the motion, what is your wish?
MS. HOBBINS: Dismiss with prejudice.
THE COURT: Okay. And you had a fair opportunity to discuss this with [your counsel]?
MS. HOBBINS: Yes.
THE COURT: And you had a chance to look at the pros and cons of dismissal and proceeding; correct?
MS. HOBBINS: We had a very short amount of time to discuss it, so...
THE COURT: Well, are you telling me that it's insufficient? Because I don't want to have this come back and say: The Court twisted my arm, and I was forced to make a quick decision. If you're not comfortable with your decision, we are -- we are able to continue the proceeding. I would just get you back on the witness stand, and [Brodersen's counsel] would continue his examination.
What would you like to do, ma'am?
.....
THE COURT: Okay. Ms. Hobbins, how would you like to proceed, ma'am?
MS. HOBBINS: I just want to go on record with some concerns that I have regarding this.
THE COURT: Well, this is simple. You don't have to agree to anything. I don't want you to agree if you don't agree. I don't want to hedge or qualify. If you don't agree with a dismissal, I would like to continue the trial, and we could get going right this second.
.....
[Hobbins's counsel]: ... [Y]our Honor, my client is willing to dismiss this case and end it right now.
THE COURT: Is that correct, ma'am?
MS. HOBBINS: Yes.
THE COURT: All right.
[Brodersen's counsel]: Judge, I don't know that that should be the premise[4 ] upon which she dismisses her case. It seems like it's a -- some sort of a setup. I don't like the vibe from that, from her legal standpoint.
[Hobbins's counsel]: It's her own decision, your Honor.....
.....
[Brodersen's counsel]: She's got to understand that she's giving up her claim with prejudice, which means you can't bring it again.
[Hobbins's counsel]: We've said that, your Honor. That was stated. That's our position.
¶ 10 The circuit court granted the motion, stating:
THE COURT: Well, they're ... stipulating to dismissal, and they understand it's with prejudice, meaning they can't bring it back.
.....
THE COURT: ... The Court's going to grant the motion to dismiss. Here's the reason why:
I heard a fair amount of testimony and evidence in the case. I had some real concerns about the advisability of having the motion to proceed forward. I expressed those concerns to counsel because I wanted those discussed with the litigants before we utilized essentially another day and a half of court time to try the case.....
... And it seemed to me there was a very thorough discussion about what would happen if a -- a child support motion were filed after the Section 71 agreement went into effect.
The other thing is I heard quite a bit of testimony about Ms. Hobbins' expenses. And I made it clear to the parties that in deciding child support, the Court would be looking at the needs of the child. And I made it clear that the testimony and evidence I had heard at that point really left me with some concerns about whether it could be shown that the order as is is insufficient to meet the needs of the child. I had heard nothing that was leading me down that path thus far. And that contributed to the statements that were made by the Court, also. And this is why I brought these concerns to the lawyers about whether we should go forward or not.....
.....
So I'm going to dismiss the case..... The dismissal is with prejudice. The [C]ourt feels that it's been adequately communicated that we could have continued with the trial and the Court was certainly willing to do so. I do not believe based on what I've heard that Ms. Hobbins wishes to do so at this point. And so I grant the motion.
Hobbins's 2016 Child Support Motion
¶ 11 On March 28, 2016, Hobbins filed a motion to reopen the dismissed child support motion or, alternatively, to modify child support so as to allow Hobbins to receive child support payments without the requirement that she reimburse Brodersen. The crux of Hobbins's motion was that the order dismissing her 2014 child support motion was void as against public policy because it precluded her from seeking child support. Hobbins also argued that the MSA violated public policy because it essentially equated the Section 71 payments with child support and required the repayment of any separate child support, thus practically barring her from ever seeking child support. Hobbins also argued that Brodersen's substantially increased income from 2002 through 2016 constituted a substantial change in circumstances.
¶ 12 The family court commissioner agreed with Hobbins; however, Brodersen moved for a de novo review of the commissioner's decision.
Hearing Before the Circuit Court
¶ 13 On July 20, 2017, the circuit court held a de novo hearing on the 2016 child support motion. The circuit court denied the motion under the doctrine of res judicata , or claim preclusion, finding that Hobbins's 2016 child support motion essentially sought to relitigate the facts of her 2014 child support motion. The court also found that the MSA did not violate public policy as the Section 71 payments were negotiated and agreed to by the parties, the parties agreed that the payments would encompass the needs of the family, and that the repayment provision of the MSA was clear and enforceable. The court also found that Hobbins failed to show that the child's needs were not being met.
¶ 14 This appeal follows.
DISCUSSION
¶ 15 Hobbins raises multiple issues on appeal, mostly centering around her contention that the MSA and the family court's dismissal of her 2014 child support motion with prejudice are void because they are contrary to public policy. She also contends that the circuit court erred in dismissing her 2016 motion for child support because the court improperly limited evidence, implicitly equated Section 71 payments with child support, and erroneously found that Hobbins failed to produce sufficient evidence to demonstrate that Isabella's needs were not being met. We conclude that Hobbins's 2016 child support motion is barred by the doctrine of claim preclusion. Hobbins is therefore precluded from raising the public policy arguments that formed the basis of both her child support motions. Accordingly, we do not address the public policy arguments and only discuss the application of the doctrine of claim preclusion to the facts of this case.
¶ 16 The doctrine of claim preclusion bars a party from bringing any claim that was the subject of a prior action when there is: (1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits that has been issued by a court of competent jurisdiction. Wickenhauser v. Lehtinen , 2007 WI 82, ¶ 22, 302 Wis. 2d 41, 734 N.W.2d 855. Whether claim preclusion applies to a certain set of facts presents a question of law that this court reviews independently. See Wisconsin Pub. Serv. Corp. v. Arby Constr., Inc. , 2012 WI 87, ¶ 30, 342 Wis. 2d 544, 818 N.W.2d 863.
¶ 17 The record here establishes a compelling factual basis for claim preclusion. In 2014, Hobbins brought a child support motion arguing that the child support provision of the MSA violated public policy, that Isabella had expenses extending beyond any payments Hobbins received pursuant to the MSA, and that the expenses constituted a substantial change in circumstances. Hobbins later voluntarily dismissed that motion with prejudice. Hobbins brought another child support motion in 2016 arguing that the child support repayment provision of the MSA violated public policy and that Brodersen's income could provide for Isabella's substantial expenses. She also argued that the dismissal of her 2014 motion violated public policy.
¶ 18 There is no dispute that the first element of claim preclusion is established-the parties identified in the 2014 motion and the 2016 motion are identical. As to the second element, the causes of action are indistinguishable. Both causes of action are based on Hobbins's child support motions. Both motions challenge the validity of the child support provision of the MSA based on public policy. Both motions addressed Hobbins's financial concerns. The hearings on both motions addressed the same issues.
¶ 19 Finally, the dismissal of Hobbins's 2014 motion with prejudice is a final judgment on the merits. "With prejudice" unequivocally refers to a court's dismissal on the merits, which the record reflects was explicitly based on the parties' stipulation. "With prejudice" means a judgment on the merits which precludes future claims. See State v. A.G.R., Jr. , 140 Wis. 2d 843, 847, 412 N.W.2d 164 (Ct. App. 1987) (a dismissal with prejudice is tantamount to a judgment on the merits); see also Jason B. v. State , 176 Wis. 2d 400, 406, 500 N.W.2d 384 (Ct. App. 1993) (by definition, a dismissal "without prejudice" allows the complainant to sue again on the same cause of action). Hobbins's stipulation to dismiss her motion for child support with prejudice is a dismissal on the merits which constitutes a final judgment. Claim preclusion bars relitigation of those claims asserted in Hobbins's 2014 motion.
¶ 20 The record belies any claim that Hobbins was unaware of the consequences of her voluntary dismissal. The family court, when addressing Hobbins's 2014 child support motion, confirmed Hobbins's decision with her multiple times. The court clearly explained that Hobbins would be precluded from bringing another motion based on the same claims and told Hobbins, if she preferred, that it was prepared to continue trial immediately on the issues raised in the motion. Brodersen's counsel also stated, "She's got to understand that she's giving up her claim with prejudice, which means [she] can't bring it again."
¶ 21 We conclude that Hobbins's 2016 child support motion was properly denied based on claim preclusion. By voluntarily agreeing to dismiss her own 2014 motion with prejudice, Hobbins is now precluded from relitigating the claims raised in that motion.
¶ 22 For the foregoing reasons, we affirm the circuit court.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

Because the child is no longer a minor, we use her full name in this opinion.

Section 71 refers to a section of the Internal Revenue Code relating to alimony and separate maintenance payments. See 26 U.S.C. § 71.

To avoid confusion, we refer to the court that presided over the 2014 child support motion as the "family court."

Prior to moving to dismiss the child support motion, the parties engaged in a debate as to whether Hobbins's divorce attorney (in 2002) told her that the Section 71 payments constituted property division and whether Brodersen ever attempted to retain Hobbins's divorce attorney.